UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF ITAÚ UNIBANCO S.A. – NASSAU BRANCH FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 24-mc-00459 |

**APPLICATION AND MEMORANDUM OF LAW IN SUPPORT OF ITAÚ'S PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN <u>FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782</u>**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | PRELIMINARY STATEMENT | | 1 |
| II. | FACTUAL BACKGROUND | | 2 |
| | A. | The Parties | 2 |
| | B. | The Promissory Note and Guaranty | 3 |
| | C. | Guarantor's Assets | 4 |
| | D. | Discovery Sought by Petitioner | 5 |
| III. | ARGUMENT | | 6 |
| | A. | The Petition Satisfies the Statutory Requirements of 28 U.S.C. § 1782 | 8 |
| | B. | All Discretionary Factors Favor Granting the Petition | 9 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Application of Esses*,
    101 F.3d 873 (2d Cir. 1996) (per curiam) ................................................................. 7

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012) ....................................................................................... 7

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019) ............................................................................. 10, 11

*In re Edelman*,
    295 F.3d 171 (2d Cir. 2002) ..................................................................................... 8

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) ................................................................................... 12

*Gorsoan Ltd. v. Bullock*,
    652 F. App'x 7 (2d Cir. 2016) ................................................................................ 11

*In re Hansainvest Hanseatische Inv.-GmbH*,
    364 F. Supp. 3d 243 (S.D.N.Y. 2018) .................................................................... 10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ......................................................................................... passim

*Itaú Unibanco S.A. – Nassau Branch v. Alvaro Jose Saieh Bendeck*,
    Case No. C-17694-2024 ........................................................................................ 1, 2

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ......................................................................... 7, 9, 12

*In re O'Keeffe*,
    650 F. App'x (2d Cir. 2016) .................................................................................. 10

**Statutes**

28 U.S.C. § 1782 .............................................................................................. passim

28 U.S.C. § 1782(a) ................................................................................... 7, 10, 12

Petitioner Itaú Unibanco S.A. – Nassau Branch ("Itaú") respectfully submits this application and memorandum of law in support of its petition (the "Petition") pursuant to 28 U.S.C. § 1782 ("Section 1782"), for an order authorizing it to obtain limited discovery from Respondents Alpha Lion House LLC ("Alpha Lion House"), Lion House Trust, Avlaj Real Estate, LLC ("Avlaj Real Estate"), and Maria Catalina Saieh Guzman ("Saieh Guzman"), in the form of the attached subpoenas *duces tecum* and *ad testificandum* (the "Subpoenas"). Petitioner seeks evidence for use in connection with *Itaú Unibanco S.A. – Nassau Branch v. Alvaro José Saieh Bendeck*, Case No. C-17694-2024, a pending litigation in the Civil Court of Santiago – Chile, and a potential related proceeding that Petitioner contemplates filing in the Civil Court of Santiago (or elsewhere) (together, the "Chilean Proceedings").

I. **PRELIMINARY STATEMENT**

This Petition is intended to assist Itaú in foreign judicial proceedings that arise from an outstanding debt. Itaú is the beneficiary of a promissory note executed on April 22, 2014 by Great Art Inc. ("Great Art" or "Debtor") and a guaranty executed by Alvaro José Saieh Bendeck ("Guarantor") guaranteeing all of Great Art's obligations and liabilities as a co-debtor under the note. As of April 2024, the promissory note had matured and there was an outstanding balance due to Itaú in the amount of $27,466,284.42, including the outstanding principal and accrued unpaid interest. The note is currently in default, and Itaú has initiated proceedings in the Civil Court of Santiago to enforce Guarantor's obligations to repay the debt.

Guarantor has indicated that he is unable to satisfy his debt, notwithstanding the fact that Guarantor appears to own, or to have recently owned, several valuable assets, including real estate in this District. As part of an independent investigation, Itaú has learned of a number of significant transfers to family members in the last several years that appear to be aimed at placing his assets outside the reach of his creditors. Itaú seeks targeted discovery into the nature

1

and timing of transfers involving real estate assets in this District for use in the pending proceeding and a potential additional proceeding in the Civil Court of Santiago – Chile (or elsewhere) that would challenge such transfers as fraudulent conveyances. Itaú's Petition meets each of the statutory requirements of Section 1782, and discretionary factors that district courts consider in evaluating Section 1782 petitions weigh heavily in favor of granting the discovery sought here.

## II.   FACTUAL BACKGROUND

### A.   The Parties

***Itaú.*** Petitioner is a branch of Itaú Unibanco S.A., a global financial services company headquartered in São Paulo, Brazil. Petitioner has a principal place of business in Nassau, Bahamas, with a registered address at Poinciana House South, East Bay Street, P.O. Box N-3930, Nassau. As relevant to this Petition, Itaú is the beneficiary of a promissory note executed on April 22, 2014, by Great Art in the aggregate principal amount of $24 million. The promissory note was guaranteed by Guarantor.

***Maria Catalina Saieh Guzman.*** Respondent Saieh Guzman is an individual who, upon information and belief, resides at 447 East 57th Street, Apt. 1W, New York, NY 10022 (the "East 57th Street Property"). She is a daughter of Guarantor and has ownership interest in the East 57th Street Property. *See* Ex. 20-22.[1]

***Avlaj Real Estate, LLC.*** Respondent Avlaj Real Estate, LLC ("Avlaj Real Estate") is a Delaware limited liability company with a registered agent located in Delaware. Upon information and belief, Guarantor purchased a property located at 2 East 67th Street, 9th Floor,

---

[1] Exhibits referenced herein are attached the Declaration of Daniel M. Perry in Support of Itaú's Petitioner for an Order to Conduct Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782.

New York, NY 10065 (the "East 67th Street Property") for $26 million in 2007, transferred ownership of the property to Avlaj Real Estate in 2022, and sold it in June 2024 for $36 million to Coulter 2006 Management Trust, which has a mailing address at Tarrant Managements, LLC, 301 Commerce Street, Suite 3150, Fort Worth, TX 73102.  *See* Ex. 9-14.

*Alpha Lion House LLC***.**  Respondent Alpha Lion House is a New York limited liability company with a registered agent located at 28 Liberty Street, New York, NY 10005.  On February 15, 2024, Guarantor transferred his ownership interest in the East 57th Street Property to Alpha Lion House.  *See* Ex. 18-19.

*Lion House Trust***.**  Respondent Lion House Trust is, upon information and belief, a family trust associated with Guarantor, his wife, and their five children.  On February 28, 2024, Alpha Lion House transferred its ownership interest in the East 57th Street Property to Lion House Trust.  Lion House Trust has a mailing address in the care of Saieh Guzman at the East 57th Street Property.  *See* Ex. 20-21.

### B.     The Promissory Note and Guaranty

On April 22, 2014, Great Art executed a promissory note in favor of Itaú in the principal amount of $24 million (the "Note").  De Aquino Decl. ¶ 5.  The Note set forth the terms pursuant to which interest would accrue on the principal and provided that interest payments would be paid in ten annual installments, the first of which was due on April 22, 2015.  *Id.*  The maturity date of the Note was April 22, 2024, at which point the outstanding principal and interest would immediately become due.  *Id.*  Failure to make a timely interest payment, and the failure to pay the outstanding principal and interest as of the maturity date, constituted events of default under the Note.  *Id.* The parties agreed that in the event of a default, interest would accrue at the maximum rate permitted by law.  *Id.*

3

The same day that Great Art executed the Note, Guarantor executed a personal guaranty in favor of Itaú assuming all obligations and liabilities of Great Art arising from the Note as a joint and several co-debtor. *Id.* ¶ 6.

For the first several years after the Note and Guaranty were executed, Debtor made timely interest payments. However, on April 23, 2021, the Debtor and Guarantor were informed by Itaú that they were in default of the obligations under the Note because they failed to make an interest payment due on April 22, 2021. *Id.* ¶ 7. Debtor eventually made a partial payment in the amount of $2,362,288.42 on March 30, 2023, for interest accrued from April 22, 2021, to March 29, 2023. *Id.* ¶ 7. A year later, the Debtor and Guarantor were again informed by Itaú that they were in default because of their failure to make a timely interest payment; and they subsequently failed to pay the outstanding principal and interest when due on the maturity date. *Id.* ¶ 7.

As of April 2024, Debtor and Guarantor owe a debt to Itaú in the total amount of $27,466,284.42. *Id.* ¶ 8. On October 2, 2024, Itaú filed an action against Guarantor in the Civil Court of Santiago – Chile to enforce its rights under the Guaranty. Itaú is seeking a judgment against Guarantor in the amount of $27,466,284.42 and a writ of execution and seizure that would attach to all of Guarantor's assets as necessary to recover the amount owed.

    C.    **Guarantor's Assets**

Guarantor has indicated that he is unable to satisfy his debt, notwithstanding the fact that Guarantor appears to own, or to have recently owned, several valuable assets, including real estate in this District. De Aquino Decl. ¶ 9. Itaú has conducted an independent investigation into Guarantor's assets and learned of a number of significant transfers to family members and affiliated entities in the last several years that appear to be aimed at placing his assets outside the

4

reach of his creditors.  *Id.* ¶ 10.  Thus, in addition to Itaú's current proceeding that seeks an executive judgment against Guarantor as to the debt owed, Itaú is also considering initiating additional judicial proceedings against Guarantor in order to challenge such transfers as fraudulent conveyances.  *Id.* ¶ 18.

By way of example, according to public records, Guarantor was the recent owner of the East 67th Street and the East 57th Street Properties.  *Id.* ¶¶ 11, 14.  Guarantor purchased the East 67th Street Property for $26 million in 2007, transferred ownership of the property to Avlaj Real Estate in 2022, and sold it in June 2024 for $36 million to a third-party buyer whose relationship or affiliation with Guarantor, if any, is unknown.  *Id.* ¶¶ 11-13; Ex. 9-14.  Separately, Guarantor purchased the East 57th Street Property for $6.5 million in 2018 and transferred his ownership interest to Alpha Lion House in February 2024.  *Id.* ¶ 14; Ex. 16-19.  Upon information and belief, Guarantor transferred his ownership interest in the East 57th Street Property for no consideration.  *Id.*  Alpha Lion House, in turn, immediately transferred ownership to Lion House Trust.  *Id.* ¶ 14; Ex. 20-21.  Lion House Trust has a mailing address at the East 57th Street Property, in the care of Saieh Guzman (a daughter of Guarantor), who maintains a residence there.  *Id.* ¶ 15.

### D. Discovery Sought by Petitioner

Petitioner's proposed subpoenas seek documents and deposition testimony from each Respondent concerning their ownership interests in the properties and their knowledge of or involvement in transferring such ownership interests; the organization and governance structure of Respondents Avlaj Real Estate, Alpha Lion House, Lion House Trust, and any of their affiliated entities (collectively, the "Entity Respondents"); and all assets belonging to, or recently transferred from, the Entity Respondents.

For example, the proposed subpoenas to Respondent Avlaj Real Estate focus on the East 67th Street Property and seek documents and information about (1) the corporate structure and organization of Avlaj Real Estate; (2) the identities of all members of Avlaj Real Estate and its authorized signatory; (3) any transfer of membership interests in Avlaj Real Estate; (4) the circumstances surrounding Avlaj Real Estate's decision to sell the property, including the timing of that decision, the steps taken to market and sell the property; and (5) Avlaj Real Estate's use of the proceeds of the $34 million sale of the property.

Similarly, the proposed subpoenas to Respondents Saieh Guzman, Alpha Lion House, and Lion House Trust focus on the East 57th Street Property and seek documents and information about (1) the corporate structure and organization of Alpha Lion House; (2) the identities of all members of Alpha Lion House and its authorized signatory; (3) any transfer of membership interests in Alpha Lion House; (4) the organizational structure of the Lion House Trust, including its trustees and beneficiaries; (5) the circumstances surrounding the transfer of ownership interests in the property from Guarantor to Alpha Lion House to Lion House Trust, including the timing of those transfers, the steps taken to effectuate the transfers and any consideration exchanged; (6) the person(s) or entities with a current ownership interest in the property; and (7) the person(s) who currently reside at the property.

### III. ARGUMENT

The Court should grant this Petition because (i) Petitioner satisfies the statutory requirements for relief under Section 1782; and (ii) all four discretionary *Intel* factors heavily favor granting the Petition.

Section 1782 allows federal district courts to authorize litigants to obtain evidence for use in foreign proceedings. In pertinent part, 28 U.S.C. § 1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

Therefore, a district court is authorized to grant an application pursuant to 28 U.S.C. § 1782 if an applicant satisfies the following statutory requirements: (1) the party from whom the discovery is sought "resides or is found" in the district where the application is made; (2) the discovery is intended "for use" in a foreign proceeding; and (3) the application is made by an "interested person" in the foreign proceeding. *Id.*; *In re Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (per curiam); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (citing statutory factors); *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (same). This Petition meets all the statutory requirements.

Once the statutory prerequisites are met, courts consider four discretionary factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). These include (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies"; and (iv) whether the discovery sought is "unduly intrusive or burdensome[.]" *Id.* at 264-65. District courts have broad discretion in granting judicial assistance to foreign tribunals to obtain evidence for use in a foreign proceeding. *See id.* at 259.

7

### A. The Petition Satisfies the Statutory Requirements of 28 U.S.C. § 1782

Itaú's Petition fulfills the statutory requirements of Section 1782 because (i) Respondents are each located within this District, (ii) the discovery sought is for use in a foreign proceeding, and (iii) Itaú is an interested person within the meaning of 28 U.S.C. § 1782.

*First*, each of the Respondents "resides or is found" in this District. Section 1782 respondents are "found" in the District if they are headquartered in, reside in, or regularly transact business in New York. *In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002). Saieh Guzman is an individual who maintains a residential address in New York and who, upon information and belief, is present in New York on at least a part-time basis. This is more than enough to satisfy the first prong, which requires "nothing more than physical presence" in the district, even if temporary. *Id.* at 179. Alpha Lion House "resides or is found" in this district because it is a New York limited liability company with a registered agent in New York. *See, e.g.*, *In re SPS I Fundo de Investimento de Acoes - Investimento no Exterior*, No. 22-MC-00118 (LAK), 2024 WL 917236, at *2 (S.D.N.Y. Mar. 4, 2024) (entity subject to jurisdiction under Section 1782 in the place where it is incorporated). Lion House Trust and Avlaj Real Estate are each "found" in this District because they each have obtained ownership interests in the real property assets that are central to the discovery sought in this action. *Id.* (entity subject to jurisdiction under Section 1782 when the discovery sought results from entity's purposeful contacts in the district). Additionally, the East 57th Street Property is the mailing address for the Lion House Trust. As such, Respondents are all "found in" the Southern District of New York.

*Second*, the discovery sought through this Petition is for use in the Chilean Proceedings. To satisfy the requirement that discovery be "for use" in a proceeding, the petitioner must show that the requested discovery is to be used "at some stage of a foreign proceeding." *Mees*, 793

8

F.3d at 295.  The foreign proceeding may be "pending," "imminent," or "within reasonable contemplation." *Id.*  Here, Petitioner seeks discovery for use in two proceedings, one of which is currently pending while the other is within reasonable contemplation.  *First*, the currently pending proceeding is an action to enter judgment for Itaú to collect a debt and freeze Guarantor's assets in Chile and abroad.  Targeted discovery into assets that Guarantor has recently owned or transferred to related third parties is directly relevant to the merits of his defense that he is purportedly unable to pay off his debt; and it is necessary for Itaú to identify his assets abroad so that it can ask the Chilean court to freeze them.  *Second*, any affirmative claim against Guarantor challenging the conveyance of any of his assets must be brought in a separate action from the currently pending proceeding.  Gandarillas Decl. ¶ 11.  In a potential fraudulent transaction claim, Itaú will require third-party discovery into Guarantor's assets and use of any sale proceeds to prove its claim under Chilean law.  *Id.* ¶ 16.

*Finally*, Itaú, as the claimant in the Chilean Proceedings, is an "interested person" within the meaning of 28 U.S.C. § 1782.  The term "interested person" includes "litigants before foreign or international tribunals . . . as well as any other person [who] merely possess[es] a reasonable interest in obtaining the assistance." *Intel Corp.* 542 U.S. at 256.  A foreign tribunal, in turn, is one that exercises governmental authority conferred by a single nation and includes judicial courts as well as administrative and regulatory bodies.  As a litigant before the Civil Court of Santiago – Chile, a judicial court exercising government authority conferred by the government of Chile, Itaú meets the third statutory requirement.

### B. All Discretionary Factors Favor Granting the Petition

In addition to satisfying the statutory requirements of Section 1782, each discretionary factor under the Supreme Court's *Intel* decision also favors granting the Petition.

9

*First*, Petitioner is not seeking discovery from a party to the Chilean Proceedings. This factor supports Section 1782 discovery because "nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. Accordingly, courts routinely grant discovery where the respondent is not a party to the foreign proceeding. *See, e.g.*, *In re del Valle Ruiz*, 939 F.3d 520, 534 (2d Cir. 2019) (granting discovery against nonparty); *In re O'Keeffe*, 650 F. App'x at 83, 85 (2d Cir. 2016) (same); *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 250 (S.D.N.Y. 2018) (same). Such is the case here, as none of the Respondents are parties to the Chilean Proceedings. And, because the discovery sought from Respondents relates to assets located in New York, Respondents may be outside the jurisdictional reach of the Civil Court of Santiago – Chile. Gandarillas Decl. ¶ 14.

*Second*, the "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" favors Section 1782 discovery. This factor weighs against granting a Section 1782 application only if there is "authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of § 1782." *In re del Valle Ruiz*, 939 F.3d at 534 (noting the absence of evidence that the foreign court would be unreceptive to U.S. judicial assistance). Here, Petitioner has submitted a declaration from Chilean counsel explaining that evidence obtained through this Petition will be usable in the pending debt collection proceeding and a potential proceeding challenging recent asset transfers. *See* Gandarillas Decl. ¶¶ 14-16. Thus, the second *Intel* factor weighs in favor of granting the Petition.

*Third*, Petitioner is seeking this discovery in good faith and is not seeking to circumvent the foreign tribunal's discovery methods or restrictions. The third *Intel* factor considers whether

the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 at 265. This does not, however, require a showing that the evidence sought is discoverable in the foreign jurisdiction. *See Gorsoan Ltd. v. Bullock*, 652 F. App'x 7, 9 (2d Cir. 2016) (holding that seeking discovery beyond the scope of discovery authorized in foreign proceeding does not circumvent foreign restrictions). In fact, there is no "requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding"; or that the "foreign tribunal has not yet had the opportunity to consider the discovery request." *Id.*

Under Chilean law, Petitioner will be able to offer lawfully obtained evidence about Guarantor's assets in connection with the debt collection proceeding and the potential proceeding challenging his asset transfers. *See* Gandarillas Decl. ¶¶ 14-16. This weighs in favor of granting the Petitioner.

*Finally*, the discovery requests are not unduly intrusive or burdensome. This factor is evaluated with reference to "the familiar standards of Rule 26 of the Federal Rules of Civil Procedure," not the scope of discovery available in the foreign tribunal. *Mees*, 793 F.3d at 302 (citing *Edelman*, 295 F.3d at 179). Here, each Respondent is believed to have had an ownership interest in one or more properties belonging to Guarantor and is therefore likely to have relevant information regarding the nature, timing, and circumstances of any asset transfers. This is pertinent to rebutting Guarantor's defense that he does not have sufficient assets to cover his debt to Itaú, and to Itaú's potential affirmative claim against Guarantor challenging his asset transfers. Petitioner has prepared targeted discovery requests seeking a discrete set of documents relating to the ownership and transfers of Guarantor's assets; the requested deposition testimony is

limited to the same topics.  Thus, the requests are not unduly intrusive or burdensome, such that the fourth *Intel* factor weighs in favor of granting the Petition.[2]

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court enter an order (i) granting the Petition and permitting service of the proposed subpoenas, attached hereto as Exhibits A through I; (ii) compelling Respondents to comply with the discovery served; and (iii) allowing further follow-up documentary discovery based on information obtained through this proceeding.  A proposed order for the Court's consideration is attached hereto as Exhibit J.

Dated: New York, New York
       October 3, 2024

                                            MILBANK LLP

                                            By: */s/ Daniel M. Perry*

                                                Daniel M. Perry

                                                55 Hudson Yards
                                                New York, New York 10001
                                                Telephone:  212-530-5000
                                                Fax:  212-530-5219
                                                dperry@milbank.com

                                                *Attorneys for Petitioner Itaú*
                                                *Unibanco S.A. – Nassau Branch*

---

[2] In the event the Court believes any request is potentially overbroad, the Second Circuit has instructed that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995). It is well within the Court's discretion, therefore, to limit or otherwise tailor requests—or to direct petitioner to do so—rather than deny the petition.