**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**IN RE APPLICATION OF ITAÚ**
**UNIBANCO S.A. – NASSAU BRANCH**
**FOR AN ORDER TO TAKE**
**DISCOVERY FOR USE IN FOREIGN**
**PROCEEDINGS PURSUANT TO**
**28 U.S.C. § 1782**

Case No. 24-mc-00459-JHR-KHP

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PETITION**
**FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN**
**<u>FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782</u>**

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................. 1

    I.      Itaú Seeks Evidence "For Use" in the Foreign Proceedings ................................. 1

          A.      Itaú Can Employ the Discovery Sought in the Collection Action ............. 1

          B.      The Collection Action is Adjudicative in Nature ..................................... 4

          C.      The Future Action is Within Reasonable Contemplation .......................... 6

          D.      Itaú Can Employ the Discovery Sought in the Future Action .................. 7

    II.     Each Respondent "Resides of is Found" in this District ....................................... 8

    III.    The Discretionary Factors Factor Granting the Petition ....................................... 9

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Accent Delight Int'l Ltd. v. Adelson*,
    869 F.3d 121 (2d Cir. 2017).............................................................................2

*In re Bouka.*,
    637 F. Supp. 3d 74 (S.D.N.Y. 2022), *modified on reconsideration sub nom. In re Bouka*, 654 F. Supp. 3d 283 (S.D.N.Y. 2023) ......................................................6

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015).........................................................................3, 6

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019).............................................................................9

*Edelman v. Taittinger*,
    295 F.3d 171 (2d Cir. 2002).............................................................................9

*Euromepa, S.A. v. R. Esmerian, Inc.*,
    154 F.3d 24 (2d Cir. 1998)). ............................................................................5

*Fonseca v. Blumenthal*,
    620 F.2d 322 (2d Cir. 1980).............................................................................5

*In re Hansainvest Hanseatische Inv.-GmbH*,
    364 F. Supp. 3d 243 (S.D.N.Y. 2018)..............................................................7

*Hornbeam Corp. v. Hornbeam Corp.*,
    722 F. App'x 7 (2d Cir. 2018) ........................................................................7

*In re Ativos Especiais II - Fundo de Investimento em Direitos Creditorios - NP*,
    No. 24-mc-119 (LJL), 2024 WL 4169550 (S.D.N.Y. Sept. 12, 2024). ........................2, 5

*In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14 Civ. 1801 (NRB)., 2014 WL 3404955 (S.D.N.Y. July 9, 2014), *aff'd sub nom. Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015)........................................................................4

*In re Schlich for Ord. to Take Discovery Pursuant to 28 U.S.C. §1782*,
    No. 16-mc-319 (VSB), 2017 WL 4155405 (S.D.N.Y. Sept. 18, 2017)...............................3, 4

*In re SPS I Fundo de Investimento de Acoes - Investimento no Exterior*,
    22-mc-00118 (LAK), 2024 WL 917236 (S.D.N.Y. Mar. 4, 2024).............................9

*Jiangsu Steamship Co. v. Success Superior Ltd.*,
    No. 14 Civ. 9997 (CM), 2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015) .....................................5

*Mangouras v. Squire Patton Boggs*,
   980 F.3d 88 (2d Cir. 2020)....................................................................................6

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015)...............................................................................3, 4

*In re MT "Baltic Soul" Produktentankschiffahrtsgesellschaft mbH & Co. KG*,
   No. 15 MISC 319(LTS), 2015 WL 5824505 (S.D.N.Y. Oct. 6 2015)....................5

*In re Postalis*,
   No. 18-mc-497 (JGK), 2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018)...................10

*In re Sargeant*,
   278 F. Supp. 3d 814 (S.D.N.Y. 2017)..................................................................6

*Union Fenosa Gas, S.A. v. Depository Tr. Co.*,
   No. 526, Docket 7906174, 2020 WL 2793055 (S.D.N.Y. May 29, 2020) ............5

*In re Associacao dos Profissionais dos Correios*,
   No. 22-mc-132 (RA), 2024 WL 4299019 (S.D.N.Y. Sept. 25, 2024)...................10

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
   596 U.S. 619, 142 S. Ct. 2078, 213 L. Ed. 2d 163 (2022) .........................................4

**Statutes**

Civil Procedure Code, Article 18.................................................................................8

Civil Procedure Code, Article 464...............................................................................2

Itaú's Petition seeks discovery for use in a pending proceeding in Chile that concerns the failure of Alvaro José Saieh Bendeck ("Saieh") to pay an outstanding debt of over $27 million to Itaú (the "Collection Action"); and for use in an anticipated future proceeding in Chile challenging Saieh's transfers of apartments in New York collectively worth tens of millions of dollars, immediately prior to and after defaulting on his debt (the "Future Action").[1]  Saieh is an ultra-high net worth individual who, as recently as 2021, was reported by Forbes to have a net worth of over $1.8 billion.  Based on publicly available records, Saieh transferred the East 57th Street Property in February 2024 to a family trust in his daughter's name as his debt to Itaú was scheduled to mature; and he sold (through an affiliated entity) the East 67th Street Property for $36 million in June 2024, after defaulting on his debt to Itaú.

Respondents focus on reasons the discovery allegedly is not "for use" in these proceedings, arguing they do not qualify for Section 1782 treatment and do not offer procedural mechanisms to introduce the evidence sought.  These claims are incorrect as a matter of Chilean law.  While Respondents also argue that certain discovery requests are beyond the scope of this Court's personal jurisdiction, they do not dispute that all Respondents are "found" in this District for at least some discovery purposes.  They also assert reasons why this Court should exercise its discretion to deny the Petition even if the statutory factors are met, each of which is unavailing.

## ARGUMENT

### I.    Itaú Seeks Evidence "For Use" in the Foreign Proceedings

#### A.  Itaú Can Employ the Discovery Sought in the Collection Action

The discovery sought is "for use" in the Collection Action pursuant to Section 1782 because it is directly relevant to the merits of Saieh's defense that he is purportedly unable to pay

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Petition (Dkt. No. 1).

his debt; and, relatedly, the discovery is necessary for Itaú to identify assets that the Chilean court can freeze to satisfy the debt in the Collection Action.  The "for use" requirement of Section 1782 assesses the "*practical ability* of an applicant to place [evidence] before a foreign tribunal" (emphasis in original) and requires the applicant to show that the discovery will "be employed with some advantage or serve some use in the proceeding."  *Accent Delight Int'l Ltd.*, *v. Adelson*, 869 F.3d 121, 131, 132 (2d Cir. 2017).  This requires a showing that  the information is "minimally relevant to the foreign proceeding" and there is a "procedural mechanism by which the [applicant] may inject the discovery it seeks."  *In re Ativos Especiais II - Fundo de Investimento em Direitos Creditorios - NP*, No. 24-mc-119 (LJL), 2024 WL 4169550, at *4 (S.D.N.Y. Sept. 12, 2024).

Respondents dispute the relevance and Itaú's ability to use the discovery sought in the Collection Action, relying heavily on procedural arguments that mischaracterize the nature and scope of the proceeding.  Specifically, Respondents assert that Saieh's purported inability to pay off his debt is not one of the "limited defenses" permitted by Chilean law in response to a debt-collection claim (Opposition Brief ("Opp.") 6, 10); and that the Chilean court can only attach assets expressly "held in the debtor's name," putting the properties at issue here outside the reach of an attachment order (Opp. 9-10).  These arguments should be rejected.

*First*, contrary to Respondents' assertion, a debtor can raise a wide range of defenses to the debt collection proceedings and is not limited to those enumerated in Article 464 of the Code of Civil Procure ("CPC").  Reply Decl. ¶ 10.  A debtor can "provide extensive evidence in support of their defense" to the same degree as in other types of legal proceedings.  *Id.* ¶ 11.  This procedure makes sense because it is not enough for the Chilean court to simply find that Saieh *owes* a debt to Itaú; in order for Itaú to *recover* on its debt, Itaú must determine if Saieh has the ability to pay the debt and identify assets sufficient to do so.  *Id.* ¶ 14.  This puts the question of Saieh's ability

to pay his debt, and the identification of assets in which he has an ownership interest, squarely at issue in the Collection Action.

*Second*, assets need not be formally held in Saieh's name for them to be subject to an order of attachment. *Id.* ¶ 13. Although only assets *owned* by the debtor may be seized, such assets include any in which a debtor maintains some direct or indirect interest. *Id.* The discovery sought is aimed specifically at determining whether and to what extent Saieh retains an ownership interest in the East 57th Street and East 67th Street Properties and, by extension, whether the Properties and/or Saieh's interest in the entities that own them can be included in an order of attachment. *Id.* ¶ 14; *see also* Opening Brief ("Br.") 9. If accepted, Respondents' overly formalistic reading of Article 2465 would provide a safe haven for a debtor to evade an order of attachment simply by holding assets in the name of another person or entity, such as an LLC or trust—precisely what Itaú suspects Saieh of doing here. Br. 11. This is not the law in Chile. Reply Decl. ¶ 15.[2]

Moreover, the cases on which Respondents rely are inapposite. In *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015), the Second Circuit held that the discovery sought did not meet the "for use" requirement because petitioners seeking the discovery *were not parties* to the foreign proceeding. *Id.* at 121. As non-parties, they could not introduce evidence into the foreign proceeding without "tak[ing] some further, independent action," and there was no clear procedural mechanism for them to do so. *Id.* Separately, in *In re Schlich for Ord. to Take Discovery Pursuant to 28 U.S.C. §1782*, No. 16-mc-319 (VSB), 2017 WL 4155405 (S.D.N.Y. Sept. 18, 2017), the district court held that discovery sought did not meet the "for use" requirement because the narrow question before the foreign tribunal was whether United States

---

[2] Not only are Respondents wrong about the applicable law, their arguments should be rejected for the separate reason that, by delving into the intricacies of Chile's civil law and procedure, they are asking this Court to entertain "a battle-by-affidavit of international legal experts" and effectively render a "superficial ruling on foreign law." *Mees v. Buiter*, 793 F.3d 291, 299 n.9 (2d Cir. 2015) (cleaned up).

law or European law applied to a question about patents' priority application dates. *Id.* at *6. Given the limited choice-of-law question before the tribunal, the court held that discovery into factual issues about inventorship was "plainly irrelevant" to that legal issue. *Id.* As noted above, the evidence that Itaú is seeking is directly relevant to the Collection Action, and there are procedural mechanisms available to introduce it.

Respondents also rely on *Mees v. Buiter*—a case in which the Second Circuit vacated the denial of a Section 1782 petition—for a note in *dicta* that a petitioner does not satisfy the "for use" requirement if it "fails to show that the materials sought will be of *any* use" in the foreign proceeding.  793 F.3d 291, 299 n.10 (2d Cir. 2015) (emphasis added).  But *Mees* stands for the more general proposition that the question in evaluating whether a petitioner satisfies the "for use" requirement is "whether the materials sought *could be used* to prove [petitioner's] claim." *Id.* at 299 (emphasis added).  Where, as here, there is a "discernible procedural mechanism" by which the discovery sought may be introduced in the foreign proceeding, courts find the "for use" requirement to be satisfied.  *In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14 Civ. 1801 (NRB)., 2014 WL 3404955, *6 (S.D.N.Y. July 9, 2014), *aff'd sub nom. Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 116 (2d Cir. 2015).

### B.  The Collection Action is Adjudicative in Nature

Section 1782 requires the discovery sought to be "for use in a proceeding in a foreign or international tribunal," which is defined as a "governmental or intergovernmental adjudicative body." *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 638, 142 S. Ct. 2078, 2091, 213 L. Ed. 2d 163 (2022).  As a judicial court that exercises authority conferred by the government of Chile, the Civil Court of Santiago is the quintessential example of a foreign tribunal.

Respondents attempt to get around the obvious by claiming that, even if the evidence

sought could be employed in the Collection Action, it would fail to satisfy the "for use" requirement because the Collection Action is not "adjudicative in nature." Opp. 10 (citing *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998)). But courts have found proceedings to be non-adjudicative when the forum has "an institutional interest in a particular result," rendering the proceeding "inconsistent with the concept of impartial adjudication." *Fonseca v. Blumenthal*, 620 F.2d 322, 324 (2d Cir. 1980) (cleaned up). A court may also act in a non-adjudicative capacity, when it "act[s] administratively or in a one-sided manner by simply granting any request submitted." *In re Ativos Especiais II*, WL 4169550 at \*6. But where, as here, "a [foreign] proceeding involves a judge deciding contested legal or factual issues, it is generally understood to be adjudicative." *Id.*[3]

Respondents misrepresent the Collection Action as administrative, arguing that it is an action to "enforce a debt" that will be decided by the court on an *ex parte* basis. Opp. 11. As an initial matter, Respondents point to no case that says an *ex parte* proceeding is inherently non-adjudicative; nor could they, as many *ex parte* proceedings involve a determination of the parties' relative rights and responsibilities, even if one party is absent from the case. *See, e.g.*, *Union Fenosa Gas, S.A. v. Depository Tr. Co.*, No. 526, Docket 7906174, 2020 WL 2793055, \*5 (S.D.N.Y. May 29, 2020) (discovery was "for use" in *ex parte* attachment proceeding because proceeding had "adjudicative quality"); *see also In re Ativos Especiais II*, WL 4169550 at \*6

---

[3] Respondents' cases do not apply here. In *Euromepa*, the Second Circuit held that a foreign bankruptcy proceeding was non-adjudicative where the merits of the underlying dispute already been adjudicated and would not be reconsidered by the foreign court. 154 F.3d at 28–29. In *Jiangsu Steamship Co. v. Success Superior Ltd.*, the court denied the petition as premature where petitioner sought discovery for "unspecified 'foreign attachment proceedings' (in unspecified foreign countries) in order to secure or satisfy any award it might receive" in an arbitration that had not been initiated. No. 14 Civ. 9997 (CM)., 2015 WL 3439220 at \*1, \*5 (S.D.N.Y. Feb. 5, 2015). And in *In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, the court denied a Section 1782 petition where the merits of the underlying dispute had already been adjudicated as to some respondents, and petitioner was only "discussing the *possibility* of initiating" adjudicative proceedings as to others. No. 15 MISC 319(LTS)., 2015 WL 5824505 at \*2 (S.D.N.Y. Oct. 6 2015) (emphasis in original).

(foreign proceeding was adjudicative in nature where petitioner simply sought "an announcement from a court that they have claims against" respondents).  The Collection Action is an inquiry into the relative rights and responsibilities of two parties in which the Civil Court must evaluate the merits of Itaú's claim and may hear opposition from the debtor.  Reply Decl. ¶ 7.  In fact, executive procedures like the Collection Action are usually *not* resolved on an *ex parte* basis in Chile.  *Id.*  It is common for a claimant to serve a debtor so that any factual disputes can be resolved by the court, rather than waiting for the debtor to challenge the merits of an attachment order after it is granted.[4]  *Id.*  While this can be a straightforward inquiry with limited evidence, these matters can also be heavily contested and last years.  *Id.*

### C.    The Future Action is Within Reasonable Contemplation

Courts find that a future action is "reasonab[ly] contempla[ted]" under Section 1782 if there is objective evidence that the foreign proceeding is not "merely speculative."  *See Certain Funds*, 798 F.3d at 124; *see also Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 101-02 (2d Cir. 2020).  A petitioner can satisfy this standard by presenting specific details about its potential claims and demonstrating a concrete basis for the court to determine that the proceeding is genuinely contemplated.   *See In re Bouka.*, 637 F. Supp. 3d 74, 85 (S.D.N.Y. 2022), *modified on reconsideration sub nom. In re Bouka*, 654 F. Supp. 3d 283 (S.D.N.Y. 2023).   Potential proceedings "are not 'within reasonable contemplation.'  Indeed, the Section 1782 Application is bereft of even the broadest contours of what the possible proceeding(s) … may entail."  *In re Sargeant*, 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017) (citation omitted).

The Gandarillas Declaration explained that Itaú is contemplating an action to challenge

---

[4] Itaú has, in fact, been actively attempting to serve Saieh with its debt-collection claim since it was filed.  Reply Decl. ¶ 7 n.1.  To date, Itaú has been unable to locate him and effectuate service, despite the fact that Saieh has been making public statements to the press.  *Id.*  Itaú believes that Saieh is intentionally evading service.  *Id.*

transfers of Saieh's assets on the ground that they were aimed at shielding the assets and/or sales proceeds from creditors (Gandarillas Decl. ¶ 16); and that such a claim would require Itaú to show that the transfers or sales were "executed in bad faith, lacked a valid cause or economic purpose, [were] executed in an unlawful manner, and/or caused or [were] intended to cause damages or prejudice to creditors" (*id.* ¶ 12). His Reply Declaration details specific causes of action under the Civil Code of Chile that Itaú can bring, sets forth the elements of each claim, and describes how the discovery sought would be relevant to them. Reply Decl. ¶¶ 16-22. Courts frequently find that a proceeding is "reasonab[ly] contempla[ted]" where, as here, the petitioner is represented by counsel in the foreign jurisdiction, has already initiated legal proceedings, and has a plan in place for future, related proceedings. *See, e.g.*, *Hornbeam Corp. v. Hornbeam Corp.*, 722 F. App'x 7, 9 (2d Cir. 2018) (sufficiently "concrete basis" for contemplated foreign proceeding where petitioner previously brought related actions and represented that it intended to initiate another); *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 249–50 (S.D.N.Y. 2018).

### D.    Itaú Can Employ the Discovery Sought in the Future Action

As noted above, Itaú has several options for asserting claims in Chile against Saieh and affiliated entities to challenge the transfers of his assets. Reply Decl. ¶¶ 16-22. In evaluating these options for the Future Action, Itaú's Chilean counsel considered whether there was a procedural mechanism to use the discovery sought here and answered that question affirmatively. *Id.* ¶ 18.

*First*, Respondents argue that a Chilean court would not have jurisdiction to determine if the transfers at issue were fraudulent because the transfers were effectuated pursuant to contracts governed by New York and Delaware law, and therefore, purportedly have "no effects in Chile." Opp. 15-16. But the transfers that Saieh and his affiliated entities made in New York *do* have a direct effect in Chile because they have diverted assets from his estate that should have been available to secure his debts. Reply Decl. ¶ 29. Relatedly, Itaú can bring suit in Chile not only

against Saieh but also the individuals and entities that participated in the fraudulent transactions, pursuant to Article 18 of the Civil Procedure Code, which permits joinder of defendants where the claims at issue stem from common underlying facts.  *Id.* ¶ 30.

      *Second*, Respondents claim that the discovery sought could not be employed in the Future Action, operating on the assumption that Respondents would bring a "civil claw back" claim, which has a one-year statute of limitations.  Opp. 16.  However, Itaú would not be barred from challenging the transfers through a civil claw back claim because both transfers occurred within the one-year statute of limitations.[5]  Br. 5; Reply Decl. ¶ 20.  And this is far from Itaú's only option in challenging the transfers; for example, Itaú can bring claims for damages under numerous articles of the Civil Code based on the wrongful and/or deliberate participation of Saieh and affiliated entities in acts that resulted in harm to Itaú.  Reply Decl. ¶ 17.  Itaú can also bring a nullity claim, which Respondents dismiss as infrequently used in Chile (Opp. 16 n. 8), but it is, in fact, frequently used.  Reply Decl. ¶¶ 19, 22.  In contrast to a claw back claim, a damages claim has a statute of limitations of four years and a nullity claim has a statute of limitations of ten years. *Id.* ¶¶ 17, 21.  So, even if the Court were to accept Respondents' challenge to the claw back claim, there can be no dispute that the relevant transfers occurred within these longer periods.

**II.     Each Respondent "Resides of is Found" in this District**

      Respondents do not deny that Guzman and Alpha Lion House are found in this District

---

[5] That the July 2024 transfer of the East 67th Street Property was from Avlaj Real Estate, not Saieh himself (Opp. 17), is inapposite because Avlaj Real Estate is an entity affiliated with Saieh and in which he owns shares. *See* Flugman Decl. Ex. 3 (Capital Contribution Agreement showing that Saieh and his wife are members of Avlaj Real Estate).  Respondents also assert that Itaú could not challenge the February 2024 transfers of the East 57th Street Property from Saieh to Alpha Lion House, and from Alpha Lion House to the Lion House Trust, on the ground that the transferees would not have information about Saieh's state of mind as needed to demonstrate bad faith (Opp. 17); but this ignores Saieh's membership interests in Alpha Lion House and the family trust (*id.* Ex. 1 (Contribution and Subscription Agreement forming Alpha Lion House and vesting all of its membership interests in Saieh)); and that Saieh's stated purpose in transferring the property was as a "gift" to his daughter (*id.* Ex. 2 (Amended Trust Agreement stating transfer was a gift to Guzman).

(and are thus subject to general personal jurisdiction), nor do they deny that the discovery material sought from all Respondents is prompted at least in part by their contacts here. Opp. 18-19. Respondents' sole argument is that certain discovery requests are beyond the scope of this Court's specific personal jurisdiction over Avlaj Real Estate and Lion House Trust. *Id.*

The "'resides or is found' language extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019). This is construed broadly, as courts in the Second Circuit recognize that a respondent need only be physically present in the district to be "found" there for the purpose of Section 1782 discovery. *See Edelman v. Taittinger*, 295 F.3d 171, 178–79 (2d Cir. 2002); *Valle Ruiz*, 939 F.3d at 528. To exercise specific personal jurisdiction, the discovery must have "proximately resulted from the respondent's forum contacts." *In re SPS I Fundo de Investimento de Acoes - Investimento no Exterior*, 22-mc-00118 (LAK), 2024 WL 917236, *3 (S.D.N.Y. Mar. 4, 2024). Respondents appear to concede that this Court has specific jurisdiction over Avlaj Real Estate with respect to discovery about the East 67th Street Property, and over Lion House Trust with respect to discovery about the East 57th Street Property. Opp. 19. The only matter in dispute, therefore, is whether Itaú can also seek discovery into, for example, the finances, ownership interests, and governance structures of these entities. Itaú submits that discovery on these topics is aimed at understanding Saieh's ownership interests in the properties and, in the case of the East 67th Street Property, the use of proceeds from the July 2024 sale. Br. 6, 9; *see also Edelman*, 295 F.3d at 17.

III.      **The Discretionary Factors Factor Granting the Petition**

None of Respondents' arguments as to the discretionary factors should be credited. *First*, the information sought cannot reasonably be obtained from Saieh (Opp. 21-22), because Itaú suspects him of actively concealing the information sought by the Petition—*i.e.*, his ownership interests in high-value assets and his efforts to put them beyond the reach of creditors. Moreover,

Itaú has not even been able to locate Saieh to serve him with its debt-collection claim, conduct that suggests it will be difficult to obtain discovery from him directly.  Reply Decl. ¶ 7 n. 1.

*Second*, the discovery sought is not a "fishing expedition" (Opp. 22).  Courts have denied petitions on this ground where, for example, a petitioner had made public statements and engaged in fundraising efforts aimed at filing a lawsuit against respondent in the United States, *In re Associacao dos Profissionais dos Correios*, No. 22-mc-132 (RA), 2024 WL 4299019, at *6 (S.D.N.Y. Sept. 25, 2024); and where a petitioner sought discovery unrelated to the foreign proceeding.  *In re Postalis*, No. 18-mc-497 (JGK), 2018 WL 6725406, at *4 (S.D.N.Y. Dec. 20, 2018).  Here, the petition is aimed at discovery relevant to both the Collection Action and the Future Action, including information about assets in which Saieh has an ownership interest and the circumstances surrounding his transfers.  *See supra* §§ 1-2, 6-7.  Respondents weakly assert in conclusory terms that Itaú is seeking discovery about New York properties with which Saieh "has no association" (Opp. 22), but his association with the properties is precisely the question at issue and is evidenced by the exhibits submitted by Respondents.  *See* Flugman Decl. Ex. A-C.

*Finally*, the Petition is reasonable in scope and is not "harassing, intrusive, [or] unduly burdensome," as Respondents allege.  Opp. 23.  Respondents accuse Itaú of improperly involving Saieh's family members and family trusts in this dispute, but it is Saieh's own conduct in transferring the New York properties to his family that resulted in this special proceeding. Br. 4-5.  Despite Respondents' suggestions to the contrary, given the fraudulent nature of the conduct at issue, Itaú has no obligation to engage in negotiations with Respondents prior to obtaining a ruling from this Court, nor could it use the Chilean justice system to obtain the discovery it seeks.  Reply Decl. ¶ 15.  Respondents' cursory request that Itaú pay legal their fees for producing discovery in this case also lacks any basis in the law and should be rejected.

Dated: December 2, 2024
       New York, New York

Respectfully submitted,

By: */s/ Daniel M. Perry*

Daniel M. Perry
55 Hudson Yards
New York, New York 10001
Telephone: 212-530-5000
Fax: 212-530-5219
dperry@milbank.com

*Attorney for Petitioner Itaú Unibanco S.A. –*
*Nassau Branch*