UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: APPLICATION OF ITAÚ UNIBANCO S/A
– NASSAU BRANCH FOR AN ORDER TO TAKE
DISCOVERY FOR USE IN A FOREIGN
PROCEEDING PURSUANT TO 28 U.S.C. § 1782

OPINION AND ORDER ON APPLICATION FOR
DISCOVERY FOR USE IN A FOREIGN
PROCEEDING

1:24-MC-00459 (KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Itaú Unibanco S/A – Nassau Branch ("Petitioner"), submitted an application requesting

that the Court, pursuant to 28 U.S.C. § 1782, authorize Petitioner to issue subpoenas

demanding that Maria Catalina Saieh Guzman ("Guzman"), Alpha Lion House LLC ("ALH"), Lion

House Trust ("Trust"), and Avlaj Real Estate, LLC ("Avlaj") (collectively, "Respondents"), produce

documents for use in a pending action by Petitioner against Alvaro José Saieh Bendeck ("Saieh")

in the Civil Court of Santiago, Chile and a potential additional action to challenge certain asset

transfers by Saieh as fraudulent.  Respondents object to the application.  For the reasons set

forth below, after consideration of the submissions and the parties' argument on March 10,

2025, Petitioner's application is granted in part and denied in part.

<u>BACKGROUND</u>

Petitioner is the Nassau, Bahamas branch of Brazilian financial services company Itaú

Unibanco S.A.  Respondents are persons and entities associated with Saieh who had or have

some interest in two Manhattan apartments that Saieh used to own and that, according to

Petitioner, may have been transferred/sold by Saieh to avoid paying a debt owed to Petitioner.

Petitioner also suspects Saieh may still have an indirect interest in the two properties.  The

following is a description of the underlying dispute and facts leading Petitioner to have an interest in learning about the sale/transfer and ownership of the properties.

On April 22, 2014, Great Art, Inc. ("Great Art" or "Debtor") executed a promissory note in favor or Petitioner in the principal amount of $24 million (the "Note"). ECF No. 4, Declaration of Stephen Montenegro de Aquino ("de Aquino Dec.") ¶ 5. Saieh signed a personal guaranty in favor of Petitioner on April 22, 2014, assuming all obligations and liabilities of Great Art under the Note as a joint and several co-debtor. *Id.* ¶ 6.

The maturity date of the Note was April 22, 2024. *Id.* ¶ 5. Interest on the principal was to be paid in ten annual installments commencing April 22, 2015. *Id.* Although initial interest payments were timely, Great Art defaulted by failing to make an interest payment on April 22, 2021. *Id.* ¶ 7. Great Art eventually made a partial payment for amounts due on March 30, 2023, but then failed to make a timely interest payment on April 22, 2023 and failed to pay the outstanding principal and interest due on the Note's maturity date--April 22, 2024. *Id.* Petitioner seeks payment of the debt from Saieh, as the guarantor. The outstanding amount due on the Note is $27,466,284.42. *Id.* ¶ 8.

On October 2, 2024, Petitioner filed an action against Saieh, a citizen and tax resident of Chile, in the Civil Court of Santiago, Chile ("Civil Action") to enforce its rights under the personal guaranty and obtain a judgment against Saieh in the full amount due under the Note, as well as a writ of execution and seizure of Saieh's assets to recover the amount due. ECF No. 5, Declaration of Cristian Gandarillas ("Gandarillas Dec.") ¶ 6. According to Petitioner's Chilean attorney, to obtain a judgment in the Civil Action, Petitioner must show that the debt owed is contained in an enforceable title, is liquid, is currently enforceable, and that the enforcement

2

action is timely.  *Id.* ¶ 8.  To obtain a writ of execution and seizure, Petitioner must identify assets belonging to Saieh that are necessary for it to fully recover the amount owed.  *Id.* ¶ 9. Saieh is entitled to raise a variety of defenses in the Chilean action, including:  (i) lack of jurisdiction of the civil court; (ii) lack of standing of the creditor or lack of proper representation by the creditor's attorneys; (iii) *lis pendens;* (iv) lack of compliance with the Executive claim's formal requirements; (v) the expiration of the guarantee or benefit of discussion; (vi) lack of authenticity of the Executive Title; (vii) lack of compliance with the legal requirements for the Executive Title to be the basis of an Executive proceeding; (viii) excessive valuation of the debt; (ix) payment of the debt; (x) release of debt; (xi) unenforceability of the debt; (xii) novation; (xiii) set-off; (xiv) nullity of the obligation; (xv) loss of the owed asset; (xvi) settlement; (xvii) expiration of the statute of limitations; and (xviii) *res judicata.  Id.*  Evidence may be obtained and submitted regarding the validity/invalidity of the defenses.  ECF No. 21, Declaration of Roberto Villaseca ("Villaseca Decl.") ¶¶ 13-16.  At oral argument, Petitioner informed the Court that Saieh has been served in this action and submitted an opposition raising various defenses.

Petitioner's investigation into Saieh's assets revealed that Saieh purchased an apartment at 2 East 67th Street in Manhattan for $26 million.  But, in 2022, not long after Great Art first defaulted on the Note, Saieh transferred the apartment to Respondent Avlaj, a Delaware LLC affiliated with Saieh, for $0.00.  De Aquino Dec. ¶ 11.  On June 20, 2024, Avlaj sold the apartment for $36 million.[1]  *Id.* ¶ 13; ECF No. 6, Declaration of Daniel M. Perry ("Perry Dec.") ¶ 11, Ex. 13.  Additionally, Saieh purchased an apartment at 447 East 57th Street in Manhattan for $6.5 million in 2018.  De Aquino Dec. ¶ 14.  In February 2024–shortly after Great

---

[1] The apartment was sold again on June 28, 2024 for $44.5 million.  *Id.* ¶ 13.

Art defaulted on the April 22, 2023 interest payment and just prior to the Note's maturity date—Saieh transferred his ownership interest in the apartment to ALH, a New York LLC affiliated with Saieh, which in turn immediately transferred ownership to the Trust, which is a Saieh family trust. *Id.* Saieh's daughter allegedly lives at the East 57th Street apartment at least part-time, and ALH and the Trust also share the East 57th Street address. *Id.* ¶ 15.

Petitioner believes Saieh transferred ownership of the two Manhattan properties out of his name to shield the assets from creditors, including Petitioner. *Id.* ¶ 16. Accordingly, Petitioner's counsel asserts that it is considering initiating a second court action against Saieh or others in Chile to challenge the transfers of the apartments as fraudulent. Gandarillas Dec. ¶ 10. Petitioner states that there are several different actions it is contemplating including one to claw back the assets, one for damages or one to nullify the transactions. It has not filed any of these actions, although the statute of limitations on a claw back action is one year, and it is arguably beyond the statute of limitations to bring such a claim at this point in time. Petitioner does not identify the defendants in the contemplated action or actions other than Saieh, although in oral argument Petitioner indicated there could be other possible defendants (including Respondents). Petitioner suggests such an action would be brought in Chile but does not rule out other venues. Petitioner needs evidence that Saieh acted in bad faith when transferring/selling the properties in order to file any such actions—something it contends is implied by the timing of the transfers/sales.

Petitioner brought the instant action seeking information about Saieh's assets and the transfer of the two apartments to ascertain if the apartments can be deemed to be assets

available to cover the debt owed under the Note and whether to initiate a second civil action to

undue the transfers/sales so it can use the properties for satisfaction of the debt.

## THE PROPOSED SUBPOENAS

Petitioner proposes to serve two subpoenas on each of the Respondents for documents

and deposition testimony.  The document subpoena on Avlaj seeks for the period June 29, 2022

to the present:

- The Avlaj Real Estate LLC agreement and any amendments thereto;
- Documents sufficient to show the corporate structure and organization of the LLC, its place and year of incorporation, and location of any physical business;
- Documents sufficient to identify all members of the LLC, including any managing member and its beneficial owner and/or ultimate beneficial owner;
- Documents concerning any transfers of membership interests in the LLC;
- Documents sufficient to identify the authorized signatory of the LLC;
- All documents and communications concerning the transfer of ownership of the 67th Street property from Saieh to the LLC, including the timing of the transfer and the amount of consideration;
- All documents and communications concerning the sale of the 67th Street property in or around June 2024;
- All documents and communications concerning the use of sales proceeds from the sale of the 67th Street property;
- All documents and communications concerning the LLC's financial condition;
- Documents sufficient to identify all of the LLC's bank accounts, investment accounts, real property, personal property and other assets;
- Documents sufficient to identify all of the LLC's acquisitions or sales of assets;
- Documents and communications concerning any transfer of anything of value between Avlaj and Saieh, his family or Saieh-affiliated entities;
- All documents evidencing any loans made to or by the LLC;
- Any guarantees made by or for the benefit of the LLC; and
- Any contracts or other agreements entered into by the LLC.

The deposition subpoena on Avlaj seeks testimony regarding the categories of

information sought in the document subpoena.

The document subpoena on ALH seeks for the period January 1, 2018 to the present:

- The ALH agreement and any amendments thereto;

- Documents sufficient to show the corporate structure and organization of the LLC, its place and year of incorporation, and location of any physical business;
- Documents sufficient to identify all members of the LLC, including any managing member and its beneficial owner and/or ultimate beneficial owner;
- Documents concerning any transfers of membership interests in the LLC;
- Documents sufficient to identify the authorized signatory of the LLC;
- All documents and communications concerning the transfer of ownership of the 57th Street property from Saieh to the LLC, including the timing of the transfer and the amount of consideration;
- All documents and communications concerning the transfer of ownership of the 57th Street property from the LLC to the Trust, including the timing of the transfer and the amount of consideration;
- All documents and communications concerning the LLC's financial condition;
- Documents sufficient to identify all of the LLC's bank accounts, investment accounts, real property, personal property and other assets;
- Documents sufficient to identify all of the LLC's acquisitions or sales of assets;
- Documents and communications concerning any transfer of anything of value between ALH , the Trust, and Saieh, his family or Saieh-affiliated entities;
- All documents evidencing any loans made to or by the LLC;
- Any guarantees made by or for the benefit of the LLC; and
- Any contracts or other agreements entered into by the LLC.

The deposition subpoena on ALH seeks testimony regarding the categories of

information sought in the document subpoena.

The document subpoena on the Trust seeks for the period January 1, 2018 to the

present:

- All of the Trust's organizing documents, governance documents, and any amendments thereto;
- Document sufficient to show the structure and organization of the Trust and its formation date;
- Documents sufficient to identify all trustees and beneficiaries of the Trust;
- Documents concerning any changes of the trustees and/or beneficiaries of the Trust;
- All documents and communications concerning the transfer of ownership interest in the East 57th Street proper from ALH to the Trust, including the reasons for the transfer, timing of the transfer, and consideration;
- All documents and communications concerning the Trust's financial condition;
- Documents sufficient to identify the Trust's bank accounts, investment accounts, real property, personal property and other assets;

- Documents sufficient to identify all of the Trust's acquisitions or sales of assets during the Relevant time period;
- Documents and communications concerning any transfer of anything of value between the Trust, Saieh, his family, ALH, Avlaj or other affiliated entities;
- All documents evidencing any loans made to or by the Trust;
- Any guarantees made by or for the benefit of the Trust; and
- Any contracts or other agreements entered into by the Trust.

The deposition subpoena on the Trust seeks testimony regarding the categories of information sought in the document subpoena.

The document subpoena on Guzman (Saieh's daughter) seeks for the period January 1, 2018 to the present:

- Documents and communications concerning any transfer of anything of value between Saieh and Guzman, any other family members, or any other affiliated trusts or entities;
- Documents and communications concerning any ongoing or forthcoming claims against Saieh and Guzman, any other family members, or any other affiliated trusts or entities;
- Documents and communications concerning any debts pending or coming due against Saieh and Guzman, any other family members, or any other affiliated trusts or entities;
- All documents and communications concerning Guzman's interest in the Trust and ALH;
- All documents and communications concerning the transfer of the East 57th Street property to the Trust;
- Documents sufficient to show the nature and duration of your residence at the East 57th Street property;
- All documents concerning the residential or commercial use of the East 57th Street property for the benefit of Saieh and Guzman, any other family members, or any other affiliated trusts or entities; and
- Documents sufficient to show whether you have a current ownership interest in the East 57th Street property.

The deposition subpoena on Guzman seeks testimony regarding the categories of information sought in the document subpoena.

Petitioner contends the evidence sought in the subpoenas would assist it in identifying and confirming assets in which Saieh has a direct or indirect ownership interest that should be subject to the writ of execution and seizure sought in the Civil Action now pending in Chile.

Petitioner also contends the evidence sought would be useable for demonstrating, among other things, that Saieh has an indirect ownership interest in assets he transferred to family members or related entities and use of any sale proceeds.  Notably, Chilean law does not permit a debtor to elude debts through improper transfers of assets to third parties or improper gifts to relatives.  ECF No. 24, Second Cristian Gandarillas Declaration ("2d Gandarillas Dec.") ¶ 15.

Petitioner's Chilean counsel states that Saieh has a right to appear in the pending Civil Action and that the court commonly resolves factual disputes raised by the parties prior to entering a judgment.  *Id.* ¶ 7.  This requires the court to evaluate and adjudicate the relative rights and responsibilities of the claimant and the debtor.  *Id.*  Debtors may raise a range of defenses in proceedings to enforce a note and collect on a debt and may introduce evidence about any alleged inability to pay and assets in which they have ownership interest.  *Id.* ¶ 10. The parties to these types of actions can present a wide variety of evidence.  *Id.* ¶ 11. Additionally, although the evidentiary period in such cases is usually up to 20 days, under Chilean law it can be extended for longer durations.  *Id.* ¶ 12.  The Chilean court has authority to issue an attachment order to all assets in which the debtor maintains a direct or indirect interest, as well as assets in which the debtor may obtain an ownership in the future, including real property and corporate assets.  *Id.* ¶ 13.

Petitioner's counsel states that Petitioner can bring claims for damages against Saieh under various article of the Chilean Civil Code and that recourse is available not just against parties to a contract but also to creditors.  The statute of limitations for such claims is four years.  *Id.* ¶ 17.  Additionally, Petitioner can bring a fraudulent conveyance action and an action

for absolute nullity impugning the validity of a contract.  There is a one-year statute of

limitations on civil claw back claims (i.e., fraudulent conveyance claims) and a ten-year statute

of limitations on a nullity claim.  *Id.* ¶¶ 20-21.  Chilean courts would have jurisdiction over such

claims, even though the apartments are located in New York, especially if Petitioner proves

Saieh diverted assets from his estate that should have been subject to an order of attachment.

*Id.* ¶¶ 24-25, 28-29.  Chile also has a long-arm statute that allows actions against people and

entities located outside of Chile in certain circumstances.  *Id.* ¶¶ 30-31.

## APPLICABLE LAW

Section 1782 empowers a United States district court to order any person residing

within its jurisdiction to provide discovery for use in a foreign proceeding pursuant to the

application of an interested party.  28 U.S.C. § 1782(a).  Applicants for discovery under Section

1782 must meet three statutory requirements: "(1) the person from whom discovery is sought

must reside or be found in the district in which the application was made, (2) the discovery

must be 'for use in a foreign proceeding before a foreign tribunal', and (3) the applicant must

be either a foreign tribunal or an 'interested person.'"  *In re Accent Delight Int'l Ltd.*, 869 F.3d

121, 128 (2d Cir. 2017) (citing *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*, 798

F.3d 113, 117 (2d Cir. 2015)).

Provided the statutory requirements for discovery are met, the Court must then

determine, in its discretion, whether the discovery should be permitted in light of the four so-

called *Intel* factors.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  These

factors are as follows:

- Whether the person from whom discovery is sought is a participant in the foreign
  proceeding;

- The nature and character of the foreign tribunal and proceedings before it, as well as the tribunal's receptivity to U.S. federal-court judicial assistance;
- Whether the discovery request is an attempt to circumvent foreign proof-gathering restrictions or policies of a foreign country or the United States; and
- Whether the discovery is unduly intrusive or burdensome.

*Intel*, 542 U.S. at 264-65. When evaluating these factors, the Court must be mindful of the goals of Section 1782: to provide efficient means of assistance to participants in international litigation and to encourage foreign countries by example to provide similar means of assistance to U.S. courts. *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020).

## DISCUSSION

Respondents contend that the first and second statutory requirements are not met.[2] They also contend the *Intel* factors weigh against granting the application because Petitioner can obtain discovery from Saieh in Chile, the application is a pre-suit fishing expedition and contravenes U.S. policies against allowing discovery in non-merit-based proceedings to attach assets. They also contend the application is designed to harass and burden Saieh's family. I address the statutory and discretionary factors below.

### 1. Statutory Factors

#### A. Whether Respondents Reside or May be Found in this District

Respondents do not contest that Guzman and ALH are found in this District, but argue that the Trust and Avlaj cannot be found in this District.

The Second Circuit has held that physical presence of a respondent in the District where a petitioner wishes to serve and serves a subpoena on a person pursuant to Section 1782

---

[2] There is no dispute that Petitioner is an "interested person" because it is a party to the Civil Action and would be a party to the contemplated action.

satisfies the statute's requirement of being "found" in the District.  *In re Application of Asher B. Edelman, et al. v. Claude Taittinger*, 295 F.3d 171, 179 (2d Cir. 2002) (foreign national temporarily in New York was subject to being subpoenaed and deposed in New York pursuant to Section 1782 subpoena); *see also First Am. Corp. v. Price Waterhouse LLP,* 154 F.3d 16, 20 (2d Cir. 1998) (allowing tag-jurisdiction on corporate entity whose partner was served with subpoena during temporary visit to New York).  Further, the Second Circuit has refused to limit Section 1782's reach to individuals and entities over which the District Court has general personal jurisdiction, instead holding that the statute's "'resides or is found' language extends to the limits of personal jurisdiction consistent with due process."[3]  *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019).  This means that the court must evaluate whether the person or entity's contacts with the forum relate to the discovery sought in the Section 1782 subpoena.  *Id.* at 530.  When a respondent having personally availed itself of the forum is the primary or proximate reason the information sought is available, specific jurisdiction is established.  *Id.* Alternatively, where the respondent's contacts are broader, "a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts." *Id.*  Finally, Section 1782 can reach documents stored outside the District where the corporate respondent is found so long as the respondent has possession, custody or control of the documents sought.  *Id.* at 532-33.

    In this case, all of the Respondents can be found in this district.  The Trust, Guzman and ALH all have addresses at East 57th Street.  Similarly, Avlaj's mailing address is listed at the 67th

---

[3] When evaluating personal jurisdiction, the court construes the pleadings and affidavits in the light most favorable to the party asserting jurisdiction and resolves doubts in that party's favor.  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018).

Street address and it transacted business pertaining to the 67th Street property in New York.

ECF Nos. 6-11-12, 14.  That the Trust and Avlaj are incorporated in or have a principal place of

business outside of New York is meaningful only to the extent that Petitioner seeks information

unrelated to their contacts with this District.  And, the majority of the discovery sought

concerns the purchase, sale, transfer and ownership of the two New York City apartments – all

information arising out of Respondents contact with this District.  *In re del Valle Ruiz*, 939 F.3d

520 (Section 1782's reach extends to the limits of personal jurisdiction consistent with due

process; discovery related to entity's contacts with forum satisfies due process).  To the extent

the discovery is overbroad, the Court addresses that issue below.  In sum, all Respondents can

be "found" in this District.

### B.  Whether the Discovery Sought is For Use in a Foreign Proceeding

Respondents argue that Petitioner has not shown that the requested documents are for

use in the Civil Action because the two Manhattan properties are not currently in Saieh's name

and therefore cannot be the subjects of an order of attachment from the Chilean Court and

because the Civil Action is not adjudicative in nature.[4]  With regard to the potential second

litigation, Respondents argue such potential action is not within Petitioner's reasonable

contemplation insofar as Petitioner has not identified the jurisdiction for such future action or

articulated the theory or claim against Saieh or others and, if the contemplated claim is one for

fraudulent transfer, such a claim cannot be brought in Chile because the transfers/sales of the

---

[4] In their papers, Respondents argued Saieh had not yet been served with any writ of execution and seizure and thus was not a party to any proceeding in Chile.  However, at oral argument, it was conceded that Saieh has now been served.  Thus, I do not further address this argument.

properties had no legal effects in Chile and therefore the court there would lack jurisdiction over any such claim.

      i.    <u>Use in the Pending Civil Action</u>

Satisfaction of the "for use" element requires that there be a foreign proceeding and that the proceeding be adjudicative in nature. *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998). Assuming this threshold is met, a petitioner can demonstrate that discovery is for "use" in a foreign proceeding by showing that it can employ the information sought "with some advantage" in the foreign proceeding. *Accent Delight Int'l Ltd.*, 869 F.3d at 131-32. The information need be only "minimally relevant" and there must be a "procedural mechanism by which petitioner may inject the discovery it seeks" into the foreign proceeding. *In re Ativos Especiais II – Fundo de Investimento em Direitos Creditorios – NP*, 24-mc-119, 2024 WL 4169550, at *4 (S.D.N.Y. Sept. 12, 2024) (cleaned up); *Certain Funds*, 798 F.2d at 120-21.

A number of courts have found that Section 1782 applications for information about assets for pre-judgment attachment or post-judgment enforcement proceedings are not for use in a foreign proceeding. Those cases, however, are distinguishable from the instant case. *See, e.g., Jiangsu Steamship Co., Ltd. v. Success Superior Ltd.*, 14 Civ. 9997, 2015 WL 3439220, *4 (S.D.N.Y. Jan. 6, 2015) (denying discovery about assets because whereabouts of assets had no bearing on issue in underlying foreign action); *In re MT Baltic Soul*, 15-mc-319, 2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) (where liability already determined and discovery related only to a contemplated post-judgment collection action, "for use" element not satisfied). Where a foreign proceeding is adjudicative and the information sought would be relevant and employed with some advantage, and the foreign proceeding is adjudicative, courts have found the "for

use" element was met.  *In re Batbold*, 21-mc-218, 2021 WL 4596536 (S.D.N.Y. Oct. 6, 2021)

(applicant sought discovery to defend lawsuits alleging he misappropriated funds and seeking

attachment of assets; because specified attachment proceedings arise out of an adjudicative

action, discovery sought deemed to satisfy "for use" element); *In re YS GM Marfin II LLC*, 20-mc-

182, 2022 WL 624291 (S.D.N.Y. Mar. 2, 2022) (post-judgment proceedings deemed adjudicative

because applicant contemplating making application to foreign tribunal requiring judgment

debtor to attend a court hearing to be questioned about location of assets or proceeding to

seek order requiring third party to pay debt based on assets of debtor held by third party).

Whether a foreign proceeding is adjudicative in nature must be determined on a case-

by-case basis with careful consideration of whether the information sought through the Section

1782 application can be used to some advantage in the foreign proceeding.  *In re YS GM Marfin*

*II LLC*, 20-MC-182, 2022 WL 624291, *5; *Union Fenosa Gas, S.A. v. Depository Tr. Co.*, No. 20

MISC. 188 (PAE), 2020 WL 2793055, at *4 (S.D.N.Y. May 29, 2020); *In re Accent Delight Int'l Ltd.*,

869 F.3d at 132.  When the foreign tribunal engages in factfinding then it is adjudicative.  *Union*

*Fenosa Gas, S.A.*, 2020 WL 2793055, *5; *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 25

F.4th 99 (2d Cir. 2022) (no categorical bar to obtaining Section 1782 relief in connection with

post-judgment proceeding).

In this case, the pending Civil Action is adjudicative in nature because it must determine

whether the Note and Guaranty are enforceable, whether the action is timely and the debt

liquid.  It also may adjudicate a number of defenses, including:  (i) lack of jurisdiction of the civil

court; (ii) lack of standing of the creditor or lack of proper representation by the creditor's

attorneys; (iii) *lis pendens;* (iv) lack of compliance with the Executive claim's formal

requirements; (v) the expiration of the guarantee or benefit of discussion; (vi) lack of

authenticity of the Executive Title; (vii) lack of compliance with the legal requirements for the

Executive Title to be the basis of an Executive proceeding; (viii) excessive valuation of the debt;

(ix) payment of the debt; (x) release of debt; (xi) unenforceability of the debt; (xii) novation;

(xiii) set-off; (xiv) nullity of the obligation; (xv) loss of the owed asset; (xvi) settlement; (xvii)

expiration of the statute of limitations; and (xviii) *res judicata.*  Some of these defenses go to

the merits of the action and some go to whether specified assets may in fact be attached and

used to satisfy the debt.  That Saieh may choose not to raise certain defenses does not render

the proceeding non-adjudicative.  As noted above, the cases on which Respondents rely to say

this element is not met are factually different and distinguishable.  *See Euromepa*, 154 F.3d at

28-29 (foreign bankruptcy proceeding non-adjudicative where merits of underlying dispute

already adjudicated; whereas in this case, the Chilean court will adjudicate a number of

defenses, including potentially about assets); *Jiangsu Steamship Co*., 2015 WL 3439220

(denying discovery as premature because petitioner did not specify the foreign attachment

proceeding it wished to bring or place where it would be brought if it won arbitration that had

not been initiated); *In re MT Baltic Soul,* 2015 WL 5824505 (denying Section 1782 petition

where merits of underlying dispute already adjudicated and petitioner had not decided to bring

future action).

   Additionally, some of the information sought from Respondents is clearly relevant to

identifying assets that Saieh may have an interest in and that may be used to satisfy the debt he

owes should that become necessary.[5]  And, if the information shows that Saieh has an interest – direct or indirect – in the properties, there is no dispute that there is a mechanism by which Petitioner may inject the evidence into the proceeding and use it to its advantage (i.e., it will use it to demonstrate the asset should be attached to satisfy the debt).  Thus, at least some of the information sought satisfies the "for use" requirement with respect to the pending Civil Action.  *YS GM Marfin II LLC*, 20-mc-182, 2022 WL 624291 and *In re Batbold*, 21-mc-218, 2021 WL 4596536; *see also Fenosa Gas, S.A.*, 2020 WL 2793055, *5 (discovery was "for use" in ex parte attachment proceeding because it had "adjudicative quality").

    ii.    <u>Use in the Contemplated Civil Action</u>

Whether the information sought by Petitioners is for use in a future action is questionable because Petitioner has not definitely decided to bring an action or even landed on the precise cause of action or identified all the proper defendants in said action(s).  For information to be of use, the "planned proceedings must be within *reasonable* contemplation. In other words, the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being

---

[5] The cases on which Respondents rely to argue the information sought regarding the sale/transfer and ownership of the properties is not relevant to the Civil Action are distinguishable.  *See Certain Funds*, 798 F.3d 113 (distinguishable because unlike in *Certain Funds* where the Section 1782 petition was denied because the entities seeking discovery were not parties to the foreign litigation and had no ability to direct the foreign proceeding or submit evidence, the Petitioner here is the main party to the foreign litigation and has the ability to direct the litigation and submit evidence); *In re Schlich for Ord. to Take Discovery Pursuant to 28 U.S.C. 1782*, 16-mc-319, 2017 WL 4155405 (S.D.N.Y. Sept. 18, 2017) (distinguishable because the narrow issue before court was whether U.S. or European law applied to the question about patent priority application dates and no evidence was needed). Further, in the *Mees* case cited by Respondents, the Court actually found that the "for use" requirement was met because the petitioner was able to show that the discovery sought could be made of use in the foreign proceeding to increase her chance of success, even if it was not necessary for her to prevail.  *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).

contemplated." *Certain Funds*, 798 F.3d at 123. This means that the Petitioner must

demonstrate the planned action "will be instituted within a reasonable time." *Id.* at 124.

   In this case, Petitioner has let the statute of limitations lapse as to the action identified

in the application (i.e., the claw back claim), and has not settled on whether to bring the other

two claims identified by its Chilean counsel or the defendants in such potential future actions.

It also does not set forth how it would use the information sought in a future action. Rather,

during oral argument, it became clear that much of the information sought in the subpoenas

that is unrelated to the issue of whether Saieh has a direct or indirect ownership interest in the

two New York City properties is aimed at discovering other potential assets and potential

targets of litigation. Pre-suit discovery to ascertain whether there are other assets and

potential defendants for a notional future action is not the purpose of Section 1782 discovery.

*See In re MT Baltic Soul*, 15-mc-319, 2015 WL 5824505 (finding it was premature to seek

information in contemplated action because application did not identify particular type of

proceeding or the countries or tribunals in which action might be taken and no basis to

establish alter ego status of entities); *In re Ativos,* 24-mc-119, 2024 WL 4169550 (denying

requested discovery for contemplated action where petitioners merely stated in their

application that they could seek a prejudgment attachment but did not expressly state an

intent to do so or demonstrate that there was a legal mechanism for them to do so); *In re

Postalis*, 2018 WL 6725406, at *4-5 (S.D.N.Y. Dec. 20, 2018) (denying requested discovery for

contemplated action where petitioner affirmed its intent to use the discovery to assist it in

pleading a case in the United States); *see also In re Sargeant*, 278 F. Supp.3d 814, 823 (S.D.N.Y.

2017) ("Courts must guard against the specter that parties may use Section 1782 to investigate

whether litigation is possible before launching it"); *Jiangsu Steamship Co.*, 2015 WL 3439220, at
*6 ("The only thing that the contemplated Section 1782 discovery would assuredly be 'in aid' of
is [applicant's] decision-making, and the statute is not designed to provide potential litigants
with information that will help them decide whether and where to commence proceedings.").

Thus, Petitioner has not satisfied the requirements that a second action is within
reasonable contemplation.  So, it is premature to seek discovery for such an action.

2. **Intel Factors**

A. **Whether Respondents are Participants in the Foreign Proceeding**

When the party from whom information is sought is not a participant in the foreign
proceeding, then the party may be outside of the foreign tribunal's reach and unobtainable
absent Section 1782 aid.  *Intel*, 542 U.S. at 264.  Thus, this factor evaluates whether the
information sought is within the jurisdiction of the foreign court.  *In re Postalis*, 2018 WL
6725406, *5.  Here, Respondents are not participants in the pending foreign proceeding, and it
is unclear whether they would be participants in any future action.  Also, Petitioner has not
articulated any basis for a court in Chile to have jurisdiction over Respondents.  Thus, this factor
weighs in favor of discovery.

B. **The Nature And Character Of The Foreign Tribunal And Proceedings Before It
And The Tribunal's Receptivity To U.S. Federal-Court Judicial Assistance**

The second *Intel* factor is not disputed.  If Petitioner's requests yield information
suggesting that Saieh has an indirect interest in one or both of the properties, this evidence
may be used in the pending Civil Action.  If the information sought reveals information showing
that Saieh acted in bad faith in transferring or selling the properties to harm Petitioner and

avoid paying the debt, that information could be used in a future action.  Thus, this factor weighs in favor of discovery.

### C. Whether The Discovery Request Is An Attempt To Circumvent Foreign Proof-Gathering Restrictions Or Policies Of A Foreign Country Or The United States

Respondents argue that the third *Intel* factor is not met because the discovery sought could be obtained directly from Saieh in the pending action or any future action.  That is, a Chilean court will allow discovery to ascertain Saieh's assets.  However, the law is clear that a party seeking discovery pursuant to Section 1782 need not first seek discovery from the foreign tribunal.  *See Gorsoan Ltd. v. Bullock*, 652 F. App'x 7, 9 (2d Cir. 2016); *Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992).   It is "[o]nly where materials being sought are privileged or otherwise prohibited from being discovered or used is the third *Intel* factor implicated."  *In re Tiberius Group*, 2020 WL 1140784, at *4 (citing *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247 (2d Cir. 2019)).  Respondents do not argue that Petitioner is attempting to circumvent proof-gathering restrictions.  Indeed, Respondents' Chilean counsel admits that Chile permits pre-suit discovery in some instances.  Villaseca Decl. ¶ 43.  Thus, this factor weighs in favor of discovery.

### D. Whether The Discovery Is Unduly Intrusive Or Burdensome

The final *Intel* factor requires a court to consider "[w]hether the subpoena contains unduly intrusive or burdensome requests."  *In re Warren*, No. 20 MISC. 208 (PGG), 2020 WL 6162214, at *5 (S.D.N.Y. Oct. 21, 2020) (citing *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 193 (S.D.N.Y. 2006) and *Intel*, 542 U.S. at 264-65).  When evaluating this factor, the Court is guided by the standards of Rule 26 of the Federal Rules of Civil Procedure.  *Mees*, 793 F.3d at 302.

Respondents argue that the discovery sought is overbroad insofar as it seeks information not relevant to the pending action and that it is improper pre-suit fishing expedition for any future action. On this factor, Respondents have persuasive arguments. Rule 26(b)(1) provides that a party may obtain discovery of information "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors relevant to proportionality are the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

The proposed subpoenas are extremely broad and seek far more information than required to ascertain whether Saieh still maintains a direct or indirect interest in either property, the reasons for the sale/transfer, and what Saieh/Avlaj did with the proceeds from the sale of the 67th Street property. This is particularly true to the extent Petitioner seeks information for a potential future action that is not reasonably contemplated and when it does not know what it expects to find – it is merely speculating that it might find some information to show bad faith. *In re Klein*, 2022 WL 14786787 (S.D.N.Y. Oct. 26, 2022) (in Section 1782 action, recognizing that court should not grant discovery requests based on speculation or in the nature of a fishing expedition; narrowing discovery sought); *see also Congelados del Cibao v. 3 Kids Corp.*, 19-cv-7596, 2021 WL 3774141 (S.D.N.Y. Aug. 24, 2021) (denying discovery where party failed to provide any facts to support claim of unclean hands, misrepresentation or fraud, finding discovery to be more in the nature of a fishing expedition); *Park West Radiology v. CareCore Nat. LLC*, 547 F. Supp. 2d 320, 322 (S.D.N.Y. 2008) ("discovery demand strikes the

Court as more like a fishing expedition by which Defendants hope to find documentation to support the numerous allegations of fraud . . .").  The Court finds, however, that this *Intel* factor is met for some of the information sought and that it can and should narrow the discovery sought to be consistent with the purposes of Section 1782.[6]  In particular, many of the documents requested are for investigation of other assets and entities related to Saieh and thus overbroad and will not be permitted.  Additionally, the Court finds that it is premature to require any depositions, as documents may reveal whether Saieh maintains any direct or indirect interest in the two New York City properties and what happened to the money from the sale of the East 67th Street property, and the Respondents may be able to provide an affidavit regarding same that is less burdensome and costly than the taking of a deposition.  Accordingly, the Court will not grant Petitioner permission to take depositions at this time.

## CONCLUSION

For the above-stated reasons, the Petition is granted in part and denied in part.  The Court will allow the following discovery:

Petitioner may request from Avlaj for the period June 29, 2022 to the present:

- The Avlaj Real Estate LLC agreement and any amendments thereto;
- Documents sufficient to show the corporate structure and organization of the LLC, its place and year of incorporation, and location of any physical business;
- Documents sufficient to identify all members of the LLC, including any managing member and its beneficial owner and/or ultimate beneficial owner;
- Documents sufficient to identify the authorized signatory of the LLC;
- All documents and communications concerning the transfer of ownership of the 67th Street property from Saieh to Avlaj, including the timing of the transfer and the amount of consideration;
- All documents and communications concerning the sale of the 67th Street property in June 2024;

---

[6] Because the Court will narrow the discovery requests, it does not address Respondents' argument that the discovery is harassing, as that argument goes principally to the burden of the discovery sought.

- All documents and communications concerning the use/location of sales proceeds from the sale of the 67th Street property;
- Documents and communications concerning any transfer of anything of value equal to or more than $500,000 from Avlaj to Saieh, his family or Saieh-affiliated entities after the sale of the 67th Street property; and
- Documents and communications concerning anything of value equal to or more than $500,000 given by Avlaj to Saieh, his family or Saieh-affiliated entities after the sale of the 67th Street property.

Petitioner may request from ALH for the period January 1, 2018 to the present:

- The ALH agreement and any amendments thereto;
- Documents sufficient to show the corporate structure and organization of the LLC, its place and year of incorporation, and location of any physical business;
- Documents sufficient to identify all members of the LLC, including any managing member and its beneficial owner and/or ultimate beneficial owner;
- Documents sufficient to identify the authorized signatory of the LLC;
- All documents and communications concerning the transfer of ownership of the 57th Street property from Saieh to ALH, including the timing of the transfer and the amount of consideration;
- All documents and communications concerning the transfer of ownership of the 57th Street property from ALH to the Trust, including the timing of the transfer and the amount of consideration;
- Documents and communications concerning any transfer of anything of value equal to or more than $500,000 from ALH to Saieh, his family or Saieh-affiliated entities after the date of the transfer of ownership of the 57th Street property; and
- Documents and communications concerning anything of value equal to or more than $500,000 given by ALH to Saieh, his family or Saieh-affiliated entities after the transfer of the 57th Street property.

Petitioner may request from the Trust for the period January 1, 2018 to the present:

- All of the Trust's organizing documents, governance documents, and any amendments thereto;
- Document sufficient to show the structure and organization of the Trust and its formation date;
- Documents sufficient to identify all trustees and beneficiaries of the Trust;
- Documents sufficient to show any changes of the trustees and/or beneficiaries of the Trust in the month preceding the transfer of the 57th Street property to ALH to the present;
- All documents and communications concerning the transfer of ownership interest in the 57th Street property from ALH to the Trust, including the reasons for the transfer, timing of the transfer, and consideration;

- Documents and communications concerning any transfer of anything of value equal to or more than $500,000 from the Trust to Saieh, his family, ALH, Avlaj or other Saieh-affiliated entities after the transfer of the 57th Street property; and
- Documents and communications concerning anything of value equal to or more than $500,000 given by the Trust to Saieh, his family or Saieh-affiliated entities after the transfer of the 57th Street property.

Petitioner may request from Guzman (Saieh's daughter) for the period January 1, 2018 to the

present:

- Documents and communications concerning any transfer of anything of value equal to or more than $500,000 from Saieh to Guzman after the transfer of the 57th Street property and sale of the 67th Street property to date;
- Documents sufficient to show any transfer or gift of money or property equal to or more than $500,000 from Guzman to Saieh after the transfer of the 57th Street property or sale of the 67th Street property;
- Documents and communications sufficient to show Guzman's interest in the Trust and ALH;
- All documents and communications concerning the transfer of the East 57th Street property to ALH and then to the Trust;
- Documents sufficient to show the nature and duration of your residence at the East 57th Street property;
- All documents concerning the residential or commercial use of the East 57th Street property for the benefit of Saieh or Saieh-affiliated trusts or entities; and
- Documents sufficient to show whether you have a current ownership interest in the East 57th Street property.

**SO ORDERED.**

Dated:     March 26, 2025
           New York, New York

_____
                    KATHARINE H. PARKER
                    United States Magistrate Judge

23