USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/16/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: APPLICATION OF ITAÚ UNIBANCO S/A – NASSAU BRANCH FOR AN ORDER TO TAKE DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

**24-MC-00459 (KHP)**

**OPINION AND ORDER ON MOTION TO COMPEL**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Itaú Unibanco S/A – Nassau Branch ("Petitioner"), brought this action pursuant to 28 U.S.C. § 1782 seeking authorization for Petitioner to issue subpoenas demanding that Maria Catalina Saieh Guzman ("Guzman"), Alpha Lion House LLC ("ALH"), Lion House Trust ("Trust"), and Avlaj Real Estate, LLC ("Avlaj") (collectively, "Respondents"), produce documents for use in a pending action by Petitioner against Alvaro José Saieh Bendeck ("Saieh") in the Civil Court of Santiago, Chile and a potential additional action to challenge certain asset transfers by Saieh as fraudulent. On March 26, 2025 the Court granted in part and denied in part Petitioner's application. (ECF No. 33) Now before the Court is Petitioner's motion to compel production pursuant to the March 26, 2025 Order. For the following reasons, Petitioner's motion is DENIED.

## BACKGROUND

The Court assumes familiarity with the factual background as previously set forth in the Court's Order at ECF No. 33. In that Order, the Court concluded that the pending Chilean Action was adjudicative in nature and limited discovery concerning the ownership, transfer, and disposition of two properties (the 57th Street and 67th Street properties) could be used to Petitioner's advantage in the pending Chilean Action. (ECF No. 33 p. 16) In particular, the

discovery allowed by the Court was intended to aid Petitioner in determining whether Saieh retained a direct or indirect ownership interest in either the 57th or 67th street properties, whether either property or related proceeds could be treated as assets available to satisfy the debt, and what became of the proceeds from the sale of the 67th Street apartment. (*Id.* pp. 15, 16, 20) Because the Chilean court was/is required not only to determine the enforceability and amount of the debt, but also to address any defenses raised by Saieh and to determine what assets could properly be subjected to execution or seizure, the Court reasoned that such evidence would assist Petitioner in identifying assets that remained beneficially owned by Saieh that could be presented to the Chilean court in connection with Petitioner's request for execution and attachment of Saieh's assets. (*Id.* p. 7) The Court declined, however, to authorize broader discovery aimed at identifying unrelated assets, entities, or potential defendants. (*Id.* pp. 12, 17) Accordingly, the Court narrowed the proposed subpoenas to documents bearing on the structure and ownership of the relevant entities, the transfers of the two properties, the consideration exchanged, the location of sale proceeds, the reasons for the sale/transfer (only as to the 57th street property), and certain substantial transfers involving Saieh, his family, or affiliated entities. (*Id.* pp. 21, 23) The Court also denied Petitioner's request for depositions, finding that documentary discovery – and, if necessary, affidavits – could provide the pertinent information in a less burdensome manner. (*Id.* p. 21)

Respondents subsequently produced certain documents concerning the organizational structure of the respondent entities and the transfers or sales of the two properties. (ECF Nos. 35, 44, 48) Respondents also submitted declarations from Paola Ponce Valdebenito, a manager at the Saieh Family Office in Santiago, Chile. (ECF Nos. 44, 50-1) Petitioner maintains, however,

that those documents and declarations do not fully address the categories of discovery authorized within the scope of the Order. In particular, Petitioner contends that Respondents have not provided discovery regarding:

- The reasons for the transfer and sale of the 67th Street property from Saieh to Avlaj, including an explanation for the timing of the transfer;
- The reasons why Saieh gifted the 57th Street property to his daughter, rather than selling it, as well as an explanation for the timing of the transfer;
- Information as to the use and location of the proceeds from the sale of the 67th Street property—including, most notably, the current location of the proceeds;
- Information regarding the loan that was obtained using the 57th Street property as collateral, the proceeds of which were provided to "related entities" that Saieh may have an interest therein; and
- A deposition from Saieh's daughter, Guzmán, who is a Respondent in this proceeding and was a party to the transactions related to the 57th Street property.

(ECF No. 75 p. 6)

Petitioner contends that this discovery is relevant, particularly the reasons for transferring or selling the properties, because it "is essential to determining whether the transfer was motivated by a desire to shield the assets from creditors, including Itaú . . . [and] to determine[ing] whether the transactions were structured in such a way as to obfuscate any remaining interest Saieh has in the properties—and/or the proceeds from the sale of the 67th Street property." (ECF No. 75 p. 9)

Respondents oppose further discovery because since the Court authorized discovery, the instant action has "fundamentally narrowed." (ECF No. 76 p. 1) Petitioner initially sought discovery for use in both the pending Chilean Civil Action and potential future fraudulent-transfer litigation. (*Id.*) However, Petitioner has since abandoned any contemplated fraudulent-transfer proceeding and now ties this action solely to the Chilean Civil Action. (ECF No. 76 p. 1) Therefore, Respondents argue Petitioner's requests – specifically those concerning

Saieh's motives, the downstream use of sale proceeds, collateralization transactions, and other matters associated with fraudulent transfer theories – exceed the limited purpose of the authorized discovery and are not relevant to the only foreign proceeding still being actively litigated. (*Id.*)

Respondents further assert that they have complied with the Court's Order by reviewing more than one million documents and producing transactional records, trust and corporate documents, gifting letters, financial records, and sworn declarations from Paola Ponce Valdebenito (manager of Saieh family office in Chile) addressing the Court-authorized topics. (*Id.* at p. 2) The discovery produced, among other things, established that the net sale proceeds from the 67th Street Property were transferred to a British Virgin Islands entity, unaffiliated with Saieh, though controlled by Saieh's wife, called S. Moon Ltd. Respondents contend that the account is outside the ownership or control of Saieh and that S. Moon does not exist within this Court's jurisdiction. At bottom, Respondents characterize the instant motion as an effort to expand, rather than enforce, the Court's prior discovery authorization.

**LEGAL STANDARD**

Generally, after a Section 1782 petition is granted, a court addresses disputes about the scope of the subpoena(s) issued under the Federal Rules of Civil Procedure ("Rule(s)"). *See In re SBK ART LLC*, 168 F.4th 68, 72, 83 (2d Cir. 2026) (finding that after the District Court fashioned an order "to meet the twin aims of Section 1782" and granted the petition, the respondent law firm's concerns were "properly addressed under ordinary discovery rules."); *see also Heraeus Kulzer, GmbH v. Biomet, Inc.,* 633 F.3d 591, 597 (7th Cir. 2011) ("The section 1782 screen — the judicial inquiry that the statute requires — is designed for preventing abuses of the right to

conduct discovery in a federal district court for use in a foreign court. Once the court has determined that such abuses are unlikely, the ordinary tools of discovery management, including Rule 26, come into play; and with objections based on the fact that discovery is being sought for use in a foreign court cleared away, section 1782 drops out."). Thus, the Court looks to the Federal Rules of Civil Procedure when evaluating a motion to compel compliance with a subpoena issued pursuant to Section 1782. *See, e.g.*, *In re Application of Gorsoan Ltd. and Gazprombank OJSC*, No. 13 Misc. 397 (PGG), 2014 WL 7232262, at *5, *10 (S.D.N.Y. Dec. 10, 2014); *see also* 28 U.S.C. § 1782(a).

A few general concepts are pertinent here. Rule 45 provides that the party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Rule 26(b) cabins discovery to non-privileged information that is both relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "[R]elevance is an extremely broad concept for purposes of discovery." *Edmar Fin. Co. v. Currenex, Inc.*, 347 F.R.D. 641, 646 (S.D.N.Y. 2024) (citing *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y. 2019) (Parker, M.J.)). "Information is 'relevant' if '(a) it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Id.* (quoting Fed. R. Evid. 401); *see MacCartney v. O'Dell*, No. 14 Civ. 3925 (NSR), 2018 WL 5023947, at *2 (S.D.N.Y. Oct. 17, 2018) (quoting *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991)) (discovery permitted "if there is 'any possibility' that the information sought to be obtained may be relevant to the subject matter of the action").

Proportionality "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "When evaluating undue burden, the court considers the relevance of the information sought, the party's need for the information, the breadth of the request, and the burden imposed." *Blake Marine Grp. LLC v. Frenkel & Co.*, No. 18 Civ. 10759 (AT) (KHP), 2019 WL 1723567, at *1 (S.D.N.Y. Apr. 18, 2019). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Pearlstein*, 332 F.R.D. at 121 (citing *Villella v. Chemical & Mining Co. of Chile Inc.*, No. 15 Civ. 2106 (ER), 2018 WL 2958361, at *8 (S.D.N.Y. June 13, 2018)).

The court has broad discretion in limiting discovery. *See Crawford-El v. Britton,* 523 U.S. 574*,* 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly."); *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (holding that district courts have both "broad latitude to determine the scope of discovery and to manage the discovery process" and "broad discretion to limit discovery in a prudential and proportionate way" under Rule 26(b)(2)).

## DISCUSSION

Though the Court previously authorized limited discovery pursuant to 28 U.S.C. § 1782, the discovery Petitioner now seeks is largely irrelevant to the Chilean Action, the only remaining or contemplated foreign proceeding.

To start, Petitioner's original application sought discovery for use in both the pending Chilean Action and potential future proceedings challenging alleged fraudulent transfers. The Court previously found it mostly premature to seek discovery for the contemplated actions, (ECF No. 33 pp. 16-18), and permitted limited discovery focused primarily on whether Saieh maintained any direct or indirect interest in the 57th Street and 67th Street properties, and what happened to the proceeds from the sale of the 67th Street property. Nevertheless, the Court also permitted limited discovery into the "reasons" for the 57th Street transfer in light of Petitioner's representations that fraudulent transfer litigation might follow. Petitioner now makes clear, however, that it seeks discovery solely for use in the pending Chilean Civil Action, in which Petitioner seeks only to enforce Saieh's guaranty and identify attachable assets. That narrowed posture is of consequence. Discovery into subjective motivations, alleged bad faith, and whether transfers were intended to hinder creditors was previously granted only insofar as it was deemed relevant to a contemplated fraudulent transfer action, and Petitioner no longer identifies any such proceeding or any other proceeding, contemplated or otherwise, for which this information would be relevant.[1] (ECF No. 75 pp. 8-9)

Several cases are instructive on this issue. In *Euromepa, S.A. v. R. Esmerian, Inc.*, for example, a petitioner filed a Section 1782 application to obtain discovery for use in French proceedings, but by the time the district court ruled, the French Court issued a final judgment, eliminating all pending French proceedings. 154 F.3d 24, 26 (2d Cir. 1998). The Second Circuit affirmed a complete dismissal of the Section 1782 petition as moot, holding "the final judgment

[1] The statute of limitations for a claw-back action (i.e., fraudulent conveyance claims) is one year as from the date of execution of the act or agreement that it is intended to revoke. (ECF 33 p. 22) Petitioner does not dispute that any fraudulent conveyance claim related to either the 67th or 57th Street properties are now time-barred.

of the French Supreme Court eliminated all pending proceedings in which Petitioners sought to use the discovery," and that a Section 1782 application is moot when there are "no foreign proceeding in which the discovery could be used." *Id.* at 26, 28. Similarly, in *Mangouras v. Squire Patton Boggs*, the district court granted the petitioner's Section 1782 application and entered final judgment after resolving privilege issues. 980 F.3d 88, 91 (2d Cir. 2020). On appeal, the Second Circuit dismissed the petitioner's application as moot because the foreign proceedings underlying the application had either conclusively ended or would not occur (one proceeding had been dismissed, and another contemplated proceeding was time-barred and never filed). *Id.* at 95-96. The Circuit also rejected the petitioner's reliance on a newly filed proceeding because it had not been raised before the district court in the initial Section 1782 application. *Id.* at 97. The caselaw thus establishes that when the foreign proceeding supporting a Section 1782 application is no longer pending or anticipated, discovery authorized for use in that terminated or unfiled proceeding can no longer be sought. *In re Order To Take Discovery for Use in a Foreign Proceeding Pursuant To 28 U.S.C. § 1782*, No. 25 Misc. 96 (JLR), 2025 WL 1446876, at *6 (S.D.N.Y. May 20, 2025) (evaluating whether records were relevant to the core question in the foreign proceeding – in this instance, a valuation question – and declining to presume relevance based on the petitioner's generalized assertion that broad discovery would "help identify . . . assets that might not otherwise be found.").

Currently, the only pending foreign action (and use for discovery) concerns whether Saieh has assets, or direct or indirect ownership interests in assets, that may be subject to attachment and execution. Though Petitioner argues that information regarding the "reasons for transferring the 67th Street property and 57th Street property, as well as the timing for

those transfers" "is plainly relevant,"(ECF No. 75 p. 9), it has not demonstrated that further discovery into the reasons for the transfers would "serve some use" in the Chilean Action. *Certain Funds*, 798 F.3d at 120. Despite the Court's prior order allowing for discovery on "[a]ll documents and communications concerning the transfer of ownership interest in the East 57th Street proper from ALH to the Trust, including the reasons for the transfer," (ECF No. 33 p. 22), absent an articulated notional fraudulent conveyance proceeding in which the reasoning and timing of the conveyance would be of consequence, and a concrete explanation of how the requested discovery would be helpful in the Chilean Action, Petitioner has not demonstrated how the information sought is still relevant. *See GMO Gamecenter USA, Inc. v. Whinstone US, Corp.,* No. 22 Civ. 5974 (JPC) (KHP), 2025 WL 722853, at *1 (S.D.N.Y. Mar. 5, 2025) (Parker, M.J.) ("The party seeking discovery has the initial burden of demonstrating relevance and proportionality."); *In re Ativos Especiais II – Fundo de Investimento em Direitos Creditórios - NP,* No. 24 Misc. 119, 2024 WL 4169550, at *16 (S.D.N.Y. Sept. 12, 2024) (denying requested discovery for contemplated action where petitioners merely stated in their application that they could seek a prejudgment attachment but did not expressly state an intent to do so or demonstrate that there was a legal mechanism for them to do so); *In re Sargeant,* 278 F. Supp.3d 814, 823 (S.D.N.Y. 2017) ("Courts must guard against the specter that parties may use Section 1782 to investigate whether litigation is possible before launching it")); *see also Congelados del Cibao v. 3 Kids Corp.,* No. 19 Civ. 7596, 2021 WL 3774141 (S.D.N.Y. Aug. 24, 2021) (denying discovery where party failed to provide any facts to support claim of unclean hands, misrepresentation or fraud, finding discovery to be more in the nature of a fishing expedition); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004)

(instructing that even where the statutory prerequisites of Section 1782 are satisfied, a district court retains broad discretion to deny or cabin discovery).

Moreover, the Court's Order never allowed Petitioner to seek information concerning the reasons for the transfer of the 67th Street property. Petitioner argues that, because the Order permitted discovery of "documents and communications concerning the transfer," it necessarily encompassed discovery into why the transfer occurred. (ECF No. 75 p. 12) Not so. The phrase "concerning the transfer" identifies the transaction about which discovery could be sought. It does not expand the permissible scope of discovery to include the transferor's subjective intent, motivations, or broader financial objectives. Had the Court intended to authorize an inquiry into the reasons for the transfer, it would have done so expressly. Instead, the Order permitted discovery directed to the circumstances and mechanics of the transfer itself, including the relevant documents, communications, participants, timing, and terms. Petitioner may not now construe that limited authorization as permitting a broader examination into the purposes motivating the transaction.

Petitioner also has failed to demonstrate that Respondents have thus far failed to comply with this Court's prior Order as to the discovery required to ascertain whether Saieh still maintains a direct or indirect interest in either property and what Saieh/Avlaj did with the proceeds from the sale of the 67th Street property. The record reflects that Respondents produced documents concerning the relevant ownership structures, the mechanics and timing of the transfers, the sale of the 67th Street property, the disposition of sale proceeds, the transfer of the net proceeds to an S. Moon Ltd. Account, and the 57th Street trust structure – documents that would, in fact, be relevant to and useful for enforcing the guaranty at issue and

identifying assets that may be attached or executed upon to satisfy the debt. (ECF No. 77-5) Respondents also provided a sworn declaration addressing the ownership and transfer issues identified by the Court. (ECF No. 77-2) With respect to the 57th Street property, Respondents produced documents concerning the transfer from Saieh to ALH and then to the Lion House Trust, including trust documents, operating agreements, transfer documentation, cooperative approvals, and gifting letters. (*Id.*)

In its prior Order, this Court expressly declined to permit broader discovery into unrelated assets, affiliated entities, or subsequent financial transactions reasoning that such requests were overbroad. (ECF No. 33 p. 21) While the Order authorized limited discovery into what happened to the 67th Street sale proceeds, it did not authorize open-ended discovery into every downstream use of those funds by a non-party entity.

The request for additional information about third-party S. Moon Ltd., including account holders, subsequent transfers, and corporate governance information, appears to be a fishing expedition resting on speculation that such information may reveal some further asset in which Saieh has an interest. *See Collens v. City of New York,* 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("While Rule 26(b)(1) still provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses."); *Congelados del Cibao v. 3 Kids Corp.*, No. 19 Civ. 7596 (LJL), 2021 WL 3774141, at *2 (S.D.N.Y. Aug. 24, 2021) (denying discovery where party failed to provide any facts to support claim of unclean hands, misrepresentation or fraud, finding discovery to be more in the nature of a fishing expedition); *Park West Radiology v. CareCore Nat. LLC*, 547 F. Supp. 2d 320, 322 (S.D.N.Y. 2008)

("[D]iscovery demand strikes the Court as more like a fishing expedition by which Defendants hope to find documentation to support the numerous allegations of fraud . . ."). Permitting Petitioner to trace the proceeds through non-party entities would transform the limited asset-identifying discovery authorized by the Order into an expansive financial investigation that is not proportional to the needs of the Chilean Action as the foray is of minimal relevance to the question of whether Saieh maintains an interest in the properties at issue which can be attached to satisfy the debt owed to Petitioner. *See Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.,* 27 F.4th 136 (2d Cir. 2022) (holding Section 1782 discovery must be for a proceeding that is adjudicative in nature and "for use" in that proceeding). Indeed, as the Court noted in its prior Order, "Pre-suit discovery to ascertain whether there are other assets and potential defendants for a notional future action is not the purpose of Section 1782 discovery." (ECF No. 33 p. 17) (collecting cases).

Additionally, Petitioner has provided limited information about S. Moon and has not indicated why the original respondents to this Section 1782 action would have information about S. Moon. Put differently, it is unclear whether Respondents are in possession, custody, or control over S. Moon Ltd.'s documents. *See Benthos Master Fund, Ltd. v. Etra*, No. 20 Civ. 3384 (VEC) (KHP), 2022 WL 17090848, at *2 (S.D.N.Y. Nov. 21, 2022) (explaining a respondent "has no burden to show that he in fact lacks control" and that it is a petitioner's obligation to affirmatively establish control). In its motion, Petitioner points principally to the fact that S. Moon Ltd. is allegedly controlled by Saieh's wife and received funds from Avlaj. (ECF No. 75 pp. 4-5) But neither Saieh's wife nor S. Moon Ltd. are Respondents. Nor can Petitioner properly assert that S.Moon can be found in the Southern District of New York. And, familial

connections and a transfer of funds do not, without more, establish that any Respondent in this action has "the right, authority, or practical ability to obtain" S. Moon Ltd.'s internal records "on demand." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007). Quite the opposite, Petitioner speculates that the additional documents it seeks would be used to determine whether Respondents have possession, custody and control of S. Moon Ltd.'s records. (ECF No. 75 p. 17)

Petitioner's reasons for requesting additional documents concerning the 2024 loan secured by the 57th Street property are similarly unpersuasive. Respondents' supplemental declaration addressed the collateralization transaction and explained that the loan was a refinancing transaction whose proceeds were applied toward repayment of debt owed to related entities arising from the initial acquisition of the apartment. (ECF No. 50-1) Petitioner's request for additional information concerning the amount of the loan, the identity and control of the related entities, and the reasons the 57th Street property was used as collateral now goes far beyond the limited discovery into the basic transactions authorized by this Court's prior Order. Petitioner has not shown that additional loan information is necessary to determine whether Saieh presently owns the 57th Street property, maintains an attachable ownership interest in it, or has a direct or indirect ownership interest in the trust or ALH. To the extent Petitioner seeks to test whether the transfer or collateralization was intended to benefit Saieh or hinder creditors, that theory again sounds in fraudulent transfer, not in the claims relevant to the pending Chilean Civil Action – the only remaining relevant foreign action.

Finally, Petitioner's request to depose Guzmán is denied. In its prior Order the Court declined to authorize depositions as documents and declarations were a "less burdensome and

costly" means of obtaining the relevant information. (ECF No. 33 p. 21) That reasoning remains undisturbed. Petitioner has not demonstrated that a deposition of Guzmán would yield non-cumulative information within the scope of the Order, particularly where Respondents represent that counsel investigated Guzmán's knowledge and determined that she lacks personal knowledge concerning most of the matters Petitioner seeks to explore. A deposition would therefore be disproportionate to the needs of this curtailed Section 1782 proceeding.

**CONCLUSION**

For the above stated reasons, Petitioner's motion to compel is DENIED. The parties are directed to file a letter by July 30, 2026, updating the Court as to the status of Respondents' production and whether any further issues remain in this action.

**The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 74.**

**SO ORDERED.**

Dated: July 16, 2026
New York, New York

Katharine H Parker

KATHARINE H. PARKER
United States Magistrate Judge